# EXHIBIT A

1.0

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

RECEIVED & FILED
2019 FEB -4 PM 1:43
SUPERIOR COURT
CLERK OF THE COURTS
NORFOLK COUNTY

SHIELD PACKAGING CO., INC.                    )
                                              )
            Plaintiff,                        )
                                              )        19   0145
v.                                            )
                                              )
STAR INSURANCE COMPANY, AIG CLAIMS            )
and AIG SPECIALTY INSURANCE CO.,              )
                                              )
            Defendants.                       )
                                              )

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Shield Packaging Co., Inc. ("Shield") hereby brings this action for declaratory

relief pursuant to Mass. R. Civ. P. 57 and G.L. c. 231A. This Complaint arises out of (a)

Defendants AIG Claims, Inc.'s ("AIG") and AIG Specialty Insurance Co.'s ("ASIC") refusal to

assume ASIC's duty to defend and indemnify Shield under a Commercial General Liability

Insurance Policy (the "ASIC Policy") to which Shield and ASIC are parties and (b) Defendant

Star Insurance Company's ("Star") refusal to defend and indemnify Shield under a Workers'

Compensation and Employers Liability Insurance Policy (the "WC Policy") to which Shield and

Star are parties. In brief, AIG and ASIC have denied coverage to Shield in connection with a

lawsuit filed against Shield by a former worker who was injured while working at Shield, on the

basis that the worker was an employee of Shield, and thus excluded from coverage under the

ASIC Policy. At the same time, Star has denied coverage to Shield under the WC Policy, on the

basis that the worker's lawsuit against Shield does not seek to impose liability on Shield for

injuries suffered during the course of the worker's employment with Shield.

Shield thus asks this Court for Declaratory Judgment, as the claim by the worker injured at Shield should be covered under the WC Policy or the General Liability Policy, as the worker was a temporary employee of Shield at the time he was injured. More specifically, Shield seeks a determination that under the terms of the General Liability Policy issued by ASIC to Shield, the worker who filed the lawsuit against Shield arising out of an injury he suffered while working at Shield was a "temporary employee" of Shield, and not a "leased employee" of Shield. Therefore, Shield seeks a determination that ASIC has a duty to defend and indemnify Shield with respect to the lawsuit the worker has filed against Shield arising out of the injury. In the alternative, Shield seeks a determination that under the terms of the WC Policy issued by Star to Shield, the worker who filed the lawsuit against Shield arising out of an injury he suffered while working at Shield was employed by Shield, and therefore Star has a duty to defend and indemnify Shield.

In addition, Shield seeks damages on account of Defendants' breach of contract and, if AIG and AISC are determined to be found to have a duty to defend and indemnify Shield, violations of G.L. c. 93A against AIG and ASIC, based on AIG's refusal to assume ASIC's duty to defend and indemnify under the General Liability Policy after previously defending and indemnifying Shield in a factually similar case.

## PARTIES

1.     Shield is a Massachusetts corporation with a principal place of business located at 99 University Road, Canton, Massachusetts.

2.     Upon information and belief, Defendant AIG, the authorized claims administrator for ASIC, is a Delaware corporation with a principal place of business located in Berkeley Heights, New Jersey.

2

3.    Upon information and belief, Defendant ASIC is an Illinois corporation with a principal place of business located in New York, New York.

4.    Upon information and belief, Defendant Star is a Michigan corporation with a principal place of business in Southfield, Michigan.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action for declaratory relief pursuant to G.L. c. 231A, § 1 and G.L. c. 212, § 4, and has personal jurisdiction over the Defendants pursuant to G.L. c. 223A, § 3(a).

6.    An actual controversy between Shield and Defendants exists within the meaning of G.L. c. 231A, § 1, specifically whether ASIC and Star have a duty to defend and a duty to indemnify Shield under the insurance policies at issue in this case with respect to the claims asserted in the underlying lawsuit, as more particularly described below.

7.    Venue in this Court is proper pursuant to G.L. c. 223, § 1.

## FACTS

### Underlying Action

8.    On June 1, 2018, Luis A. Gomez ("Gomez") filed a lawsuit against Shield in Hampshire Superior Court, Massachusetts styled *Luis A. Gomez v. Shield Packaging Co.*, C.A. No. 2018-80CV-00112 (the "Action").

9.    Gomez was engaged and compensated by Southern Mass Staffing, Inc. ("Southern Mass Staffing"), a temporary staffing agency, and was assigned by Southern Mass Staffing to render services to Shield. Gomez was used by Shield to augment Shield's regular workforce in order to meet Shield's short-term heavy workload conditions.

10.     During busier times, when Shield's full-time workforce needed short-term supplementation to manage heavy workloads, Shield used up to 4,000 temporary employee hours per week from Southern Mass Staffing's workers. During slower work times, Shield used less than 1,000 temporary employee hours per week from Southern Mass Staffing's workers. *See* Summary of Hours Worked by Southern Mass Staffing Workers, 2016-2017, attached hereto as Exhibit A. Shield's use of Southern Mass Staffing workers was not consistent on a week-to-week basis.

11.     The individuals assigned by Southern Mass Staffing to work at Shield changed frequently, and Shield's use of Southern Mass Staffing workers was department and workload specific. For example, at times of short-term heavy workloads in one department, Southern Mass Staffing workers might be used. At other times, other department workloads might be heavy, and also require short-term support.

12.     Gomez was assigned to work as a machine operator at Shield's location in Dudley, Massachusetts.

13.     On May 26, 2016, Gomez was injured while working on a machine at Shield's premises. Gomez subsequently filed the Action against Shield, alleging one count against Shield for negligence and failure to warn. At the time of his injury, Gomez had been assigned by Southern Mass Staffing to work at Shield for approximately two months.

### General Liability Insurance Contract with ASIC

14.     At the time of Gomez's injury, Shield was insured under the ASIC Policy, a commercial general liability and pollution legal liability policy, identified as Policy No. 15411971, issued by ASIC, attached hereto as Exhibit B.

15.     AIG is the authorized claims administrator for ASIC.

4

16.     Pursuant to the ASIC Policy, ASIC agreed to defend and indemnify Shield for damages resulting from bodily injury or property damage.  In relevant part, the ASIC Policy reads as follows:

### Coverage A – Bodily Injury and Property Damage Liability

**1. Insuring Agreement**
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies.  We will have the right and duty to defend the insured against any **suit** seeking those damages.  However, we will have no duty to defend the insured against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply.  We may, at our discretion, investigate any **occurrence** and settle any **claim** or suit that may result.

*See* ASIC Policy, Section 1, Coverage A, § 1(a) (emphasis in original).

17.     Pursuant to the ASIC Policy, "bodily injury" means "bodily injury, physical injury, sickness, disease, mental anguish, shock or emotional distress, sustained by any person, including death resulting from any of these at any time." *See* ASIC Policy, Section VI, § 3. "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* ASIC Policy, Section VI, § 29. "Claim" means "a written demand received by the insured alleging liability or responsibility on the part of the insured." *See* ASIC Policy, Section VI, § 5. "Suit" means "a civil proceeding in which damages because of bodily injury to which this insurance applies are alleged." *See* ASIC Policy, Section VI, § 39.

18.     The ASIC Policy contains certain exclusions as to coverage.  Applicable to this action, the ASIC Policy contains the following exclusion related to coverage of bodily injury to Shield's employees:

**2. Exclusions**
This insurance does not apply to:
. . .
**e. Employer's Liability**
**Bodily injury** to:
**(1)** An **employee** of the insured, arising out of and in the course of:
**(a)** Employment by the insured; or
**(b)** Performing duties related to the conduct of the insured's business[.]

*See* ASIC Policy, Section 1, Coverage A, § 2(e) (emphasis in original).

19.     Pursuant to the ASIC Policy, "Employee" is defined to include a "leased worker," but does not include a "temporary worker." *See* ASIC Policy, Section VI, § 11.

20.     Pursuant to the ASIC Policy, "leased worker" means "a person leased to [Shield] by a labor leasing firm under an agreement between [Shield] and the labor leasing firm, to perform duties related to the conduct of [Shield's] business." *See* ASIC Policy, Section VI, § 20. In addition, "leased worker" does not include a "temporary worker." *See id.*

21.     "Temporary worker" is defined in the ASIC Policy to mean "a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions." *See* ASIC Policy, Section VI, § 40.

## Workers' Compensation Insurance Contract with Star

22.     At the time of Gomez's injury, Shield was also insured under the WC Policy, a workers' compensation and employers liability policy, identified as Policy No. WC 0391568, issued by Star, attached hereto as Exhibit C.

23.     Pursuant to the WC Policy, Star agreed to defend and indemnify Shield for damages resulting from bodily injury by accident or bodily injury by disease. *See* WC Policy, Part Two, Sections A-B, D-E. The term "bodily injury" is not defined in the WC Policy.

24.     Pursuant to the WC Policy, "the bodily injury must arise out of and in the course of the injured employee's employment by you." *See* WC Policy, Part Two, Section A(1). The terms "employee" and "employment" are not defined in the WC Policy.

### Demands for Coverage

25.     Shield notified its insurance broker of the occurrence of a claim and the insurance broker submitted a formal Notice of Occurrence Claim, dated October 6, 2017, to AIG.

26.     By letter dated December 29, 2017, with a full reservation of rights, AIG and ASIC agreed to investigate and defend Shield with respect to the claim asserted by Gomez in the Action. *See* December 28, 2017 letter, attached hereto as Exhibit D.

27.     Subsequently, by letter dated May 9, 2018, AIG informed Shield that it and ASIC were withdrawing their coverage position set forth in the December 29, 2017 letter, and that it, on behalf of ASIC, was denying coverage under the ASIC Policy. *See* May 9, 2018 letter, attached hereto as Exhibit E.

28.     AIG's decision to withdraw coverage was made pursuant to the "Employee" exclusion in the ASIC Policy. Specifically, AIG and ASIC contended that Gomez was a "leased employee" as defined in the ASIC Policy, and not a "temporary employee" as defined in the ASIC Policy.

29.     As set forth above, pursuant to the ASIC Policy's "Employee" exclusion, insurance coverage under the ASIC Policy *would* apply to bodily injury suffered by a temporary worker, but insurance coverage under the ASIC Policy would *not* apply to bodily injury suffered by a leased worker.

30.     In May of 2018, Shield submitted a request for coverage under the employer liability part of the WC Policy for any claims that might arise out of Gomez's accident. In August of 2018, Shield informed Star of its receipt of the Summons and Complaint in the Action.

31.     By letter dated August 20, 2018, and with a full reservation of rights, Star denied any obligation to defend or indemnify Shield against any of the claims in the Action "because Mr. Gomez [did] not contend that he was employed by Shield at the time of the Accident or seek to recover for bodily injuries sustained in the course of his employment by Shield." *See* August 20, 2018 letter, attached hereto as Exhibit F.

32.     By letter dated October 2, 2018, Shield requested that AIG withdraw its declination of coverage and provide Shield with defense and indemnity against the Action. *See* October 2, 2018 letter, attached hereto as Exhibit G.

33.     AIG and ASIC responded to Shield's request by letter dated October 25, 2018. *See* October 25, 2018 letter, attached hereto as Exhibit H. In this letter, AIG and ASIC maintained their declination of coverage, but admitted that the exclusion would not apply if Gomez was a "temporary worker" as that term is defined in the ASIC Policy, and not a "leased employee." *See id.*, p. 2.

34.     Shield subsequently requested reconsideration by AIG and ASIC, and supplied AIG and ASIC with payroll information by letters dated December 28, 2018 and January 3, 2019 that demonstrated that Shield did not use Southern Mass Staffing workers on a consistent basis as leased employees.

35.     AIG and ASIC responded to Shield's letters by letter dated January 22, 2019. In this letter, AIG and ASIC maintained their declination of coverage despite Shield's provision of

information demonstrating that Southern Mass Staffing workers were used on a fluctuating short-term basis during periods of heavy workloads.

36.    AIG and ASIC's denial of coverage to Shield in this case is inconsistent with its previous acceptance of coverage to Shield's sister entity Harrison Specialty Company under a materially similar insurance policy, under materially similar facts.

**COUNT I**
**DECLARATORY JUDGMENT: DEFENDANTS' DUTY TO DEFEND**
**(AIG AND ASIC)**

37.    The allegations contained in Paragraphs 1-36 are incorporated by reference as if fully stated herein.

38.    There is a genuine and bona fide dispute and an actual controversy and disagreement between Shield and AIG and ASIC regarding whether ASIC has a duty to defend Shield against the claims asserted in the Action.

39.    Pursuant to G.L. c. 231A, Shield in good faith requests that the Court declare the following:

    a.    ASIC has a duty to defend Shield in connection with the claims asserted in the Action because Gomez was a "temporary employee," not a "leased employee," as those terms are defined in the ASIC Policy, and therefore does not fall under the "Employee" exclusion set forth in Section 1, Coverage A, § 2(e) of the ASIC Policy.

**COUNT II**
**DECLARATORY JUDGMENT: DEFENDANTS' DUTY TO INDEMNIFY**
**(AIG AND ASIC)**

40.    The allegations contained in Paragraphs 1-39 are incorporated by reference as if fully stated herein.

41.     There is a genuine and bona fide dispute and an actual controversy and disagreement between Shield and AIG and ASIC regarding whether ASIC has a duty to indemnify Shield against the Action.

42.     Pursuant to G.L. c. 231A, Shield in good faith requests that the Court declare the following:

    b.     ASIC has a duty to indemnify Shield against the Action because Gomez was a "temporary employee," not a "leased employee," as those terms are defined in the ASIC Policy, and therefore does not fall under the "Employee" exclusion set forth in Section 1, Coverage A, § 2(e) of the ASIC Policy.

### COUNT III
### BREACH OF CONTRACT
### (ASIC)

43.     The allegations contained in Paragraphs 1-42 are incorporated by reference as if fully stated herein.

44.     The ASIC Policy is a valid and fully enforceable contract supported by good and sufficient consideration.

45.     The ASIC Policy requires ASIC to defend and indemnify Shield in the event of damages resulting from bodily injury to a temporary employee, and from any suit seeking those damages, as those terms are defined in the ASIC Policy.

46.     In breach of the ASIC Policy, ASIC has refused to defend and indemnify Shield against the Action.

47.     ASIC's breach of the ASIC Policy has caused damage to Shield.

**COUNT IV**
**VIOLATION OF G.L. c. 93A, § 11, c. 176D, § 3(9)**
**(AIG AND ASIC)**

48.     The allegations contained in Paragraphs 1-47 are incorporated by reference as if fully stated herein.

49.     AIG and ASIC's refusal to defend and indemnify Shield against the Action, and their determination that Gomez was a "leased worker" as opposed to a "temporary worker" under the terms of the ASIC Policy despite clear evidence to the contrary and inconsistent with their past acceptance of coverage under a materially similar policy and materially similar facts, constitute a failure to effectuate prompt, fair, and equitable settlement of Shield's claim in which liability has become reasonably clear.

50.     AIG and ASIC's actions constitute unfair or deceptive acts or practices in the business of insurance under G.L. c. 176D, § 3(9) and unfair and deceptive acts under G.L. c. 93A, § 11.

51.     AIG and ASIC's refusal to defend and indemnify Shield has caused damage to Shield.

**COUNT V**
**DECLARATORY JUDGMENT: DEFENDANT'S DUTY TO DEFEND**
**(STAR)**

52.     The allegations contained in Paragraphs 1-51 are incorporated by reference as if fully stated herein.

53.     There is a genuine and bona fide dispute and an actual controversy and disagreement between Shield and Star regarding whether Star has a duty to defend Shield against the claims asserted in the Action.

11

54. In the alternative to Count I, pursuant to G.L. c. 231A, Shield in good faith requests that the Court declare the following:

    a.    Star has a duty to defend Shield in connection with the claims asserted in the Action because Gomez's bodily injury arose out of and in the course of Gomez's employment by Shield, as set forth in Part Two, Section A(1) of the WC Policy.

## COUNT VI
## DECLARATORY JUDGMENT: DEFENDANT'S DUTY TO INDEMNIFY
## (STAR)

55. The allegations contained in Paragraphs 1-54 are incorporated by reference as if fully stated herein.

56. There is a genuine and bona fide dispute and an actual controversy and disagreement between Shield and Star regarding whether Star has a duty to indemnify Shield against the Action.

57. In the alternative to Count II, pursuant to G.L. c. 231A, Shield in good faith requests that the Court declare the following:

    b.    Star has a duty to indemnify Shield in connection with the claims asserted in the Action because Gomez's bodily injury arose out of and in the course of Gomez's employment by Shield, as set forth in Part Two, Section A(1) of the WC Policy.

## COUNT VII
## BREACH OF CONTRACT
## (STAR)

58. The allegations contained in Paragraphs 1-57 are incorporated by reference as if fully stated herein.

59. The WC Policy is a valid and fully enforceable contract supported by good and sufficient consideration.

60. In the alternative to Count III, the WC Policy requires Star to defend and indemnify Shield in the event of damages resulting from bodily injury to an employee, and from any suit seeking those damages, as those terms are defined in the WC Policy.

61. In breach of the WC Policy, Star has refused to defend and indemnify Shield against the Action.

62. Star's breach of the WC Policy has caused damage to Shield.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shield Packaging Co., Inc. prays in the alternative as follows:

As to Defendants AIG and ASIC:

1. For a declaration that Gomez was a "temporary employee" as defined in the ASIC Policy; and

2. For a declaration that ASIC has a duty to defend Shield in the Action; and

3. For a declaration that ASIC has a duty to indemnify Shield against the Action; and

4. That the Court award Shield damages in an amount to be determined at trial, to be doubled or trebled under G.L. c. 93A, plus interest, attorneys' fees, and costs; and

5. For such other relief as this Court deems just and proper;

Or, in the alternative, as to Defendant Star:

1. For a declaration that Gomez's bodily injury arose out of and in the course of Gomez's employment by Shield under the terms of the WC Policy; and

2. For a declaration that Star has a duty to defend Shield in the Action; and

3. For a declaration that Star has a duty to indemnify Shield against the Action; and

13

4. That the Court award Shield damages in an amount to be determined at trial, plus interest, attorneys' fees, and costs; and

5. For such other relief as this Court deems just and proper.

## **Jury Demand**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

SHIELD PACKAGING CO., INC.,

By its attorneys,

Liam T. O'Connell (BBO# 558249)
loconnell@nutter.com
Nutter McClennen & Fish, LLP
155 Seaport Boulevard
Boston, MA 02210
Telephone: (617) 439-2000
Facsimile: (617) 310-9000

Dated: February 4, 2019

4383468.2

14

# Hours Worked Each Week by at Shield by South Shore Staffing Workers (2016-2017)

| 2016 | | 2017 | |
|---|---|---|---|
| **Workweek Ending** | **Total Hours** | **Workweek Ending** | **Total Hours** |
| 1/08/16 | 4,012 | 1/06/17 | 1,497 |
| 1/15/16 | 3,884 | 1/13/17 | 1,719 |
| 1/22/16 | 3,416 | 1/20/17 | 1,788 |
| 1/29/16 | 2,954 | 1/27/17 | 1,946 |
| 2/05/16 | 1,961 | 2/03/17 | 1,781 |
| 2/19/16 | 1,631 | 2/10/17 | 1,555 |
| 2/26/16 | 2,208 | 2/17/17 | 1,777 |
| 3/04/16 | 1,889 | 2/24/17 | 1,528 |
| 3/11/16 | 1,899 | 3/03/17 | 1,657 |
| 3/18/16 | 2,161 | 3/10/17 | 1,777 |
| 3/24/16 | 1,628 | 3/17/17 | 1,486 |
| 4/01/16 | 2,195 | 3/24/17 | 2,059 |
| 4/08/16 | 2,149 | 3/31/17 | 1,557 |
| 4/15/16 | 2,265 | 4/07/17 | 1,438 |
| 4/22/16 | 2,346 | 4/14/17 | 1,266 |
| 4/29/16 | 2,329 | 4/21/17 | 1,380 |
| 5/06/16 | 2,380 | 4/28/17 | 1,465 |
| 5/13/16 | 2,331 | 5/05/17 | 1,532 |
| 5/20/13 | 2,485 | 5/12/17 | 1,611 |
| 5/27/16 | 1,489 | 5/19/17 | 1,540 |
| 6/03/16 | 1,385 | 5/26/17 | 1,530 |
| 6/10/16 | 1,436 | 6/02/17 | 1,098 |
| 6/17/16 | 1,948 | 6/09/17 | 1,461 |
| 6/24/18 | 1,832 | 6/16/17 | 1,322 |
| 7/01/16 | 1,610 | 6/22/17 | 1,123 |
| 7/08/16 | 1,560 | 6/30/17 | 1,461 |
| 7/15/16 | 1,926 | 7/07/17 | 190 |
| 7/22/16 | 1,753 | 7/14/17 | 970 |
| 7/29/16 | 1,758 | 7/21/17 | 870 |
| 8/05/16 | 2,033 | 7/28/17 | 899 |
| 8/12/16 | 1,992 | 8/04/17 | 968 |
| 8/19/16 | 1,995 | 8/11/17 | 1,087 |
| 8/26/16 | 2,109 | 8/18/17 | 1,004 |
| 9/02/16 | 1,943 | 8/25/17 | 1,008 |
| 9/09/18 | 1,563 | 9/01/17 | 1,003 |
| 9/16/16 | 2,130 | 9/08/17 | 850 |
| 9/23/16 | 1,744 | 9/15/17 | 1,094 |
| 9/30/16 | 1,725 | 9/21/17 | 1,079 |
| 10/07/16 | 1,698 | 9/28/17 | 1,258 |
| 10/14/16 | 1,432 | 10/06/17 | 1,337 |
| 10/21/16 | 1,725 | 10/13/17 | 976 |
| 10/28/16 | 1,700 | 10/20/17 | 1,185 |
| 11/04/2016 | 1708 | 10/27/17 | 1,307 |
| 11/11/2016 | 1829 | 11/03/17 | 1,023 |
| 11/18/2016 | 1427 | 11/10/17 | 1,405 |
| 11/23/2016 | 899 | 11/17/17 | 1,351 |
| 12/02/2016 | 1562 | 11/22/17 | 858 |
| 12/09/2016 | 1569 | 12/01/17 | 1,184 |

| 2016 | |
|---|---|
| **Workweek Ending** | **Total Hours** |
| 12/16/2016 | 1628 |
| 12/23/2016 | 1682 |
| | |
| | |

| 2017 | |
|---|---|
| **Workweek Ending** | **Total Hours** |
| 12/08/17 | 1,347 |
| 12/15/17 | 1,296 |
| 12/22/17 | 1,417 |
| 12/29/17 | 1,034 |

# AIG SPECIALTY INSURANCE COMPANY
### (A Capital Stock Company, herein called the Company)
### 175 Water Street
### New York, NY 10038

## COMMERCIAL GENERAL LIABILITY AND POLLUTION LEGAL LIABILITY DECLARATIONS
### NOTICE: COVERAGE D IS CLAIMS MADE -- PLEASE READ THE ENTIRE FORM CAREFULLY.

POLICY NUMBER: EG    15411971                    RENEWAL OF: 15411971

ITEM 1. NAMED INSURED:  SHIELD PACKAGING CO., INC

     ADDRESS:     99 UNIVERSITY ROAD
                    P.O. BOX 190
                    CANTON, MA 02021-0190

     PRODUCER:                        PRODUCER NO: 0000019514
     JAMES B OSWALD COMPANY THE
     1100 SUPERIOR AVENUE
     SUITE 1500
     CLEVELAND, OH 44114

ITEM 2. POLICY PERIOD:    From: February 1, 2016    To: February 1, 2017
          At 12:01 A.M. Standard Time at the address of the Named Insured shown above.

ITEM 3. LIMITS OF INSURANCE:

| | |
|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Products-Completed Operations) | $2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 |
| EACH OCCURRENCE LIMIT | $1,000,000 |
| EACH LOSS LIMIT (Coverage D - POLLUTION LEGAL LIABILITY) | $1,000,000 |
| EACH LOSS LIMIT (Coverage E - ADDITIONAL POLLUTION LEGAL LIABILITY) | $1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $1,000,000 |
| MEDICAL EXPENSE LIMIT | $25,000        Any One Person |

ITEM 4. COVERAGE AND DEDUCTIBLES:

| | | |
|---|---|---|
| COVERAGE A: | PURCHASED | $75,000 |
| COVERAGE B: | PURCHASED | $0 |
| COVERAGE C: | PURCHASED | $0 |
| COVERAGE D-1: | NOT PURCHASED | |
| COVERAGE D-2: | PURCHASED | $25,000 |
| COVERAGE E-1: | PURCHASED | $75,000 |
| COVERAGE E-2: | PURCHASED | $75,000 |
| COVERAGE E-3: | NOT PURCHASED | |
| COVERAGE E-4: | NOT PURCHASED | |

ITEM 5. FORMS OF BUSINESS:

  ☐ Individual    ☐ Partnership    ☐ Joint Venture    ☒ Organization (Other than Partnership or Joint Venture)

ITEM 6. POLICY PREMIUM: $174,035
     Premium for Certified Acts of Terrorism Coverage Under Terrorism Risk Insurance Act 2002:
          Not Applicable

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

94444 (11/13)
CI5368

NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION

AIG SPECIALTY INSURANCE COMPANY

COMMERCIAL GENERAL LIABILITY AND POLLUTION
LEGAL LIABILITY COVERAGE FORM

COVERAGE D PROVIDES "CLAIMS MADE AND REPORTED" COVERAGE, AND HAS REPORTING
REQUIREMENTS DIFFERENT FROM THOSE FOR COVERAGES A, B AND E. COVERAGE D
REQUIRES THAT A CLAIM BE MADE UPON THE INSURED AND REPORTED IN WRITING
TO US DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF ANY.

PLEASE READ THE ENTIRE FORM CAREFULLY

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what
is and is not covered. This Policy is issued in reliance upon the statements in the Application, deemed to be annexed
hereto.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any
other person or organization qualifying as a Named Insured under this Policy. The words "we", "us" and "our" refer to
the Company providing this Insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Defined terms, other than headings, appear in bold face type. Refer to **SECTION VI - DEFINITIONS.**

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury**
      or **property damage** to which this Insurance applies. We will have the right and duty to defend the insured
      against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit**
      seeking damages for **bodily injury** or **property damage** to which this Insurance does not apply. We may, at
      our discretion, investigate any **occurrence** and settle any claim or **suit** that may result. But:

      (1) The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE
          AND DEDUCTIBLE;** and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of
          judgments or settlements under Coverages A or B, medical expenses under Coverage C, or loss under
          Coverages D or E.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for
      under **SUPPLEMENTARY PAYMENTS - COVERAGES A, B and E.**

   b. This insurance applies to **bodily injury** and **property damage** only if:

      (1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage
          territory;** and

      (2) The **bodily injury** or **property damage** occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of **SECTION II - WHO IS AN INSURED** and
          no employee authorized by you to give or receive notice of an **occurrence** or claim, knew that the **bodily
          injury** or **property damage** had occurred, in whole or in part. If such a listed insured or authorized

NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION

Copyright, American International Group, Inc., 2013
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2004

employee knew, prior to the policy period, that the bodily injury or property damage occurred, then any continuation, change or resumption of such bodily injury or property damage during or after the policy period will be deemed to have been known prior to the policy period.

c. Bodily injury or property damage which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of SECTION II - WHO IS AN INSURED or any employee authorized by you to give or receive notice of an occurrence or claim, includes any continuation, change or resumption of that bodily injury or property damage after the end of the policy period.

d. Bodily injury or property damage will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of SECTION II - WHO IS AN INSURED or any employee authorized by you to give or receive notice of an occurrence or claim:

(1) Reports all, or any part, of the bodily injury or property damage to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the bodily injury or property damage; or

(3) Becomes aware by any other means that bodily injury or property damage has occurred or has begun to occur.

e. Damages because of bodily injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.

## 2. Exclusions

This insurance does not apply to:

### a. Expected or Intended Injury

Bodily injury or property damage expected or intended from the standpoint of the insured. This exclusion does not apply to bodily injury or property damage resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

Bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an insured contract, provided the bodily injury or property damage occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an insured contract, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of bodily injury or property damage, provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same insured contract; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

Bodily injury or property damage for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

Bodily injury to:

(1) An employee of the insured, arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an insured contract.

**f. Pollution**

(1) Bodily injury or property damage which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

**g. Aircraft, Auto or Watercraft**

Bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of

103124 (05/14)
CI5506

any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the occurrence which caused the bodily injury or property damage involved the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is not being used to carry persons or property for a charge;

(3) An aircraft hired or chartered by or loaned to an insured with a paid crew, but not owned by any insured;

(4) Parking an auto on, or on the ways next to, premises you own or rent, provided the auto is not owned by or rented or loaned to you or the insured;

(5) Liability assumed under any insured contract for the ownership, maintenance or use of aircraft or watercraft;

(6) Bodily injury or property damage arising out:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of mobile equipment if it were not subject to a compulsory or financial responsibility law in the state where it is licensed or principally garaged; or

(b) The operation of any of the machinery or equipment listed in paragraph f.(2) or f.(3) of the definition of mobile equipment; or

(7) Bodily injury or property damage arising out of:

(a) The delivery of your product into a wrong receptacle or to a wrong address; or

(b) The erroneous delivery of your product for another product by any conveyance;

if, under (a) or (b), the bodily injury or property damage occurs after such operations have been completed or abandoned at the site of such delivery. Operations which may require further service, maintenance, correction, repair or replacement because of performance at the wrong address or because of any error, defect or deficiency, but which are otherwise completed, will be deemed completed.

h. Mobile Equipment

Bodily injury or property damage arising out of:

(1) The transportation of mobile equipment by an auto owned or operated by or rented or loaned to any insured; or

(2) The use of mobile equipment in, or while in practice for or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

i. War

Bodily injury or property damage arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

**j.** **Damage to Property**

Property damage to:

(1) Property you own, rent, or occupy including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **property damage** arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to property damage (other than damage by fire, lightning or explosion) to premises, including the contents of such premises, rented to you for a period of 30 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE.**

Paragraph (2) of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to **property damage** included in the **products-completed operations hazard.**

**k.** **Damage to Your Product**

**Property damage** to **your product** arising out of it or any part of it.

**l.** **Damage to Your Work**

**Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.** **Damage to Impaired Property or Property Not Physically Injured**

**Property damage** to **impaired property** or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work;** or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

n. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) Your product;

(2) Your work; or

(3) Impaired property;

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. Personal and Advertising Injury

Bodily injury arising out of personal and advertising injury.

p. Electronic Data

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. Nuclear Material and Radioactivity

Bodily injury or property damage arising from the radioactive, toxic or explosive properties of nuclear material or arising out of the actual, alleged or threatened exposure of persons or property to any radioactive matter.

r. Asbestos

(1) Bodily injury arising out of the presence, ingestion or inhalation of, or exposure to, asbestos in any form; or

(2) Property damage arising out of the presence of, or exposure to, asbestos in any form.

s. Lead

(1) Bodily injury arising out of the presence, ingestion, inhalation or absorption of, or exposure to, lead in any form; or

(2) Property damage arising out of the presence of, or exposure to, lead in any form.

t. Employment - Related Practices

Bodily injury to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of the person as a consequence of bodily injury to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

### u. Professional Services

Bodily injury or property damage arising out of the rendering or failure to render any professional services.

### v. Punitive Damages

Any punitive, exemplary or the multiplied portion of multiple damages, or any civil or administrative fines, penalties or assessments, except where such damages, fines, penalties or assessments are insurable by applicable law.

### w. Criminal Fines, Penalties and Assessments

Any criminal fines, criminal penalties or criminal assessments.

### x. Violation of Statutes in Connection with Sending, Transmitting or Communicating any Material or Information

Bodily injury or property damage arising out of or resulting from, caused directly or indirectly, in whole or in part by, any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that includes, addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever.

### y. Covered under Coverage D or E

Any bodily injury or property damage covered, or associated with a suit for which a defense is being provided, under **COVERAGE D - POLLUTION LEGAL LIABILITY** or **COVERAGE E - ADDITIONAL POLLUTION LEGAL LIABILITY.**

Exclusions c. through n. do not apply to damage by fire, lightning or explosion to premises while rented to or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE,** paragraph 6.

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of personal and advertising injury to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit

seeking damages for personal and advertising injury to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or suit that may result. But:

(1) The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B, medical expenses under Coverage C, or loss under Coverages D or E.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A, B AND E.

b. This insurance applies to personal and advertising injury caused by an offense arising out of your business but only if the offense was committed in the coverage territory during the policy period.

2. Exclusions

This insurance does not apply to:

a. Knowing Violation of Rights of Another

Personal and advertising injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury.

b. Material Published with Knowledge of Falsity

Personal and advertising injury arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. Material Published Prior to Policy Period

Personal and advertising injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. Criminal Acts

Personal and advertising injury arising out of a criminal act committed by or at the direction of the insured.

e. Contractual Liability

Personal and advertising injury for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. Breach of Contract

Personal and advertising injury arising out of a breach of contract, except an implied contract to use another's advertising idea in your advertisement.

g. Quality of Performance of Goods - Failure to Conform to Statements

Personal and advertising injury arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your advertisement.

h. Wrong Description of Prices

Personal and advertising injury arising out of the wrong description of the price of goods, products or services stated in your advertisement.

i.  **Infringement of Copyright, Patent, Trademark or Trade Secret**

Personal and advertising injury arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your advertisement.

However, this exclusion does not apply to infringement, in your advertisement, of copyright, trade dress or slogan.

j.  **Insureds in Media and Internet Type Businesses**

Personal and advertising injury committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 30. a., b. and c. of personal and advertising injury under **SECTION VI - DEFINITIONS.**

For the purpose of this exclusion, the placing of frames, borders, or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k.  **Electronic Chatrooms or Bulletin Boards**

Personal and advertising injury arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l.  **Unauthorized Use of Another's Name or Product**

Personal and advertising injury arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m.  **Pollution**

Personal and advertising injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

n.  **Pollution-Related**

Personal and advertising injury arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of pollutants.

o.  **War**

Personal and advertising injury arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

p. **Nuclear Material and Radioactivity**

Personal and advertising injury arising from the radioactive, toxic or explosive properties of nuclear material or arising out of the actual, alleged or threatened exposure of persons or property to any radioactive matter.

q. **Asbestos**

Personal and advertising injury arising out of the presence, ingestion or inhalation of, or exposure to, asbestos in any form.

r. **Lead**

Personal and advertising injury arising out of the presence, ingestion, inhalation or absorption of, or exposure to, lead in any form.

s. **Employment - Related Practices**

Personal and advertising injury to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of the person as a consequence of bodily injury to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

t. **Professional Services**

Personal and advertising injury arising out of the rendering or failure to render any professional services.

u. **Punitive Damages**

Any punitive, exemplary or the multiplied portion of multiple damages, or any civil or administrative fines, penalties or assessments, except where such damages, fines, penalties or assessments are insurable by applicable law.

v. Criminal Fines, Penalties and Assessments

Any criminal fines, criminal penalties or criminal assessments.

w. Violation of Statutes in Connection with Sending, Transmitting or Communicating any Material or Information

Personal and advertising injury arising out of or resulting from, caused directly or indirectly, in whole or in part by, any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that includes, addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever.

## COVERAGE C - MEDICAL PAYMENTS

1. Insuring Agreement

   a. We will pay medical expenses as described below for bodily injury caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (1) The accident takes place in the coverage territory and during the policy period;

      (2) The expenses are incurred and reported to us within one year of the date of the accident; and

      (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid at the time of an accident;

      (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral service.

2. Exclusions

   We will not pay expenses for bodily injury:

   a. Any Insured

      To any insured, except volunteer workers.

   b. Hired Person

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. Injury on Normally Occupied Premises

      To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation and Similar Laws**

To a person, whether or not an employee of any insured, if benefits for the bodily injury are payable or must be provided under a workers compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletics contests.

**f. Products-Completed Operations Hazard**

Included within the products-completed operations hazard.

**g. Coverage A Exclusions**

Excluded under Coverage A.

## COVERAGE D - POLLUTION LEGAL LIABILITY

1. **Insuring Agreements**

   **COVERAGE D-1**

   **a. THIRD-PARTY CLAIMS FOR ON-SITE BODILY INJURY OR PROPERTY DAMAGE**

   We will pay loss that the insured becomes legally obligated to pay as a result of claims for bodily injury or property damage resulting from pollution conditions on or under the insured property while the person injured or property damaged is on the insured property and such pollution conditions did not first commence before the Retroactive Date, if any, shown in the Schedule of Insured Property(ies) Endorsement, provided the claim for bodily injury or property damage is first made against the insured and reported to us in writing during the policy period or any extended reporting period if applicable.

   **b. THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS**

   We will pay loss that the insured becomes legally obligated to pay as a result of claims for bodily injury, property damage or clean-up costs resulting from pollution conditions, beyond the boundaries of the insured property, that migrated from the insured property and did not first commence before the Retroactive Date, if any, shown in the Schedule of Insured Property(ies) Endorsement provided the claim for bodily injury, property damage or clean-up costs is first made against the insured and reported to us in writing during the policy period or any extended reporting period if applicable.

   **c. THIRD-PARTY CLAIMS FOR ON-SITE AND OFF-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS**

   We will pay loss that the insured becomes legally obligated to pay as a result of claims for:

   (i) Clean-up costs resulting from pollution conditions on or under the non-owned location or bodily injury or property damage of parties other than: (a) employees of the non-owned location if the non-owned location was used at any time for the handling, storage, disposal, processing or treatment of waste or (b) the owners, operators or contractors of the non-owned location; or

   (ii) For bodily injury, property damage or clean-up costs resulting from pollution conditions, beyond the boundaries of the non-owned location, that migrated from the non-owned location;

provided such pollution conditions did not first commence before the Retroactive Date shown in the Schedule of Non-Owned Location(s) Endorsement, if any, and the claim for bodily injury, property damage or clean-up costs is first made against the insured and reported to us in writing during the policy period or any extended reporting period if applicable.

Under this Coverage D-1, if a claim for loss is first made against the insured and reported to us in writing during the policy period or any extended reporting period, if applicable, in accordance with **SECTION IV - CONDITIONS**, Paragraph 2. of this Policy, all claims for loss arising from the same, related or continuous pollution conditions which are first made against the insured and reported under a subsequent renewal Policy issued by us or any other subsidiary or affiliate of American International Group, Inc. providing substantially the same coverage as this Policy, shall be deemed to have been first made against the insured and reported to us during this policy period. Coverage under this Policy for such subsequent claims shall not apply, however, unless at the time such claims are first made and reported, the insured has maintained with us or any other subsidiary or affiliate of American International Group, Inc. Pollution Legal Liability coverage substantially the same as this coverage on a continuous, uninterrupted basis since the first such claim was made against the insured and reported to us.

## COVERAGE D-2

### a. THIRD-PARTY CLAIMS FOR ON-SITE BODILY INJURY OR PROPERTY DAMAGE

We will pay on behalf of the insured, loss that the insured becomes legally obligated to pay as a result of claims for bodily injury or property damage resulting from pollution conditions on or under an insured property, if such bodily injury or property damage takes place while the person injured or property damaged is on such insured property.

### b. THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY OR PROPERTY DAMAGE

We will pay on behalf of the insured, loss that the insured becomes legally obligated to pay as a result of claims for bodily injury or property damage resulting from pollution conditions, beyond the boundaries of an insured property, that migrated from such insured property.

### c. EMERGENCY RESPONSE COSTS

We will pay emergency response costs resulting from pollution conditions on, under or that migrated from an insured property. Emergency response costs must be first incurred by the insured and reported to us during the policy period.

All of the following requirements must be satisfied for this coverage D-2, paragraphs a. and b. to apply:

(1) The bodily injury or property damage results from pollution conditions, which pollution conditions first commence during the policy period;

(2) Such pollution conditions first commence at an identified time and place during the policy period;

(3) A responsible insured discovers the pollution conditions no later than ten (10) calendar days after its commencement;

(4) The insured reports the pollution conditions to us in writing no later than thirty (30) business days following its discovery by a responsible insured as described in Paragraph (3) above and in accordance with Section IV.2. of the Policy;

(5) Such pollution conditions do not originate or arise from, or relate to an underground storage tank;

(6) Such pollution conditions are not (i) heat, smoke or fumes from a hostile fire or (ii) solely with respect to bodily injury, smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; and

(7) Such pollution conditions are not a continuation or repetition of another event.

For this Coverage D-2, paragraph c. to apply, all of the following conditions must be satisfied:

(1) The insured must report the emergency response costs to us, in writing and in accordance with Section IV.2. of the Policy; and

(2) Such pollution conditions must be unexpected and unintended from the standpoint of the insured.

Under this Coverage D-2, all claims for bodily injury or property damage, whether or not such claim is first made against the insured during the policy period, arising from the same, related or continuous pollution conditions shall be subject to the terms, conditions, and limits of this Policy solely, whether or not another policy has been issued by us or any other subsidiary or affiliate of American International Group, Inc. In the event that a claim that is otherwise covered under Coverage D-2 of this Policy is submitted by the insured to us or any other subsidiary or affiliate of American International Group, Inc. under another policy of insurance and such claim is covered in whole or in part by us or any other subsidiary or affiliate of American International Group, Inc. under such other policy of insurance, coverage under Coverage D-2 shall not apply.

## DEFENSE APPLICABLE TO COVERAGE D

We will have the right and the duty to defend any claim covered under Coverage D-1 and D-2, whichever is applicable. Our duty to defend or continue defending any such claim, and to pay any loss, shall cease once the applicable limit of liability as described in SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE has been exhausted. Defense costs, charges and expenses are included in loss, reduce the applicable limit of insurance as described in SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE and are included within the COVERAGE D Deductible amount shown in ITEM 4. COVERAGE AND DEDUCTIBLES: of the Declarations.

We will present any settlement offers to the insured and if the insured refuses to consent to any settlement recommended by us and acceptable to the claimant, our duty to defend the insured shall then cease and the insured shall thereafter negotiate or defend such claim independently of us and our liability shall not exceed the amount, less the Deductible or any outstanding Deductible balance, for which the claim could have been settled if our recommendation was consented to.

## 2. Exclusions - Applicable to Coverage D

This insurance does not apply to claims or loss:

### a. Criminal Fines, Penalties and Assessments

Due to any criminal fines, criminal penalties or criminal assessments.

### b. Contractual Liability

Arising from liability of others assumed by the insured under any contract or agreement, unless the liability of the insured would have attached in the absence of such contract or agreement or the contract or agreement is an insured contract.

### c. Transportation

Arising out of the maintenance, use, operation or loading or unloading of any conveyance beyond the boundaries of the insured property.

### d. Intentional Noncompliance

Arising from pollution conditions based upon or attributable to any responsible insured's intentional, willful or deliberate noncompliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body.

**e. Internal Expenses**

For costs, charges or expenses incurred by the insured for goods supplied or services performed by the staff or salaried employees of the insured, or its parent, subsidiary or affiliate, except for emergency response costs, or unless such costs, charges or expenses are incurred with our prior written approval at our sole discretion.

**f. Insured vs. Insured**

By any insured against any other insured. This exclusion does not apply to claims initiated by third parties or claims that arise out of an indemnification given by you to another insured in an insured contract.

**g. Asbestos and Lead**

Arising from asbestos or any asbestos-containing materials or lead-based paint installed or applied in, on or to any building or other structure. This exclusion shall not apply to claims for bodily injury, property damage, or to clean-up costs for the remediation of soil and groundwater.

**h. Employer's Liability**

Arising from bodily injury to an employee of the insured arising out of and in the course of employment by the insured. This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**i. Prior Knowledge/Non-Disclosure**

Arising from pollution conditions existing prior to the inception date of this Policy and known by a responsible insured and not disclosed in the application for this Policy, or any previous policy for which this Policy is a renewal thereof.

**j. Identified Underground Storage Tank**

Solely with respect to Coverage D-1, arising from pollution conditions resulting from an underground storage tank whose existence is known by a responsible insured as of the inception date of the Policy and which is located on the insured property unless such underground storage tank is scheduled on the Policy by endorsement.

**k. War**

Arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

**l. Nuclear Material**

Arising out of the radioactive, toxic or explosive properties of nuclear material, and for which the United States Department of Energy or any other government authority has indemnified the insured, or for which the Price Anderson Act provides protection for the insured.

## COVERAGE E - ADDITIONAL POLLUTION LEGAL LIABILITY

**1. Insuring Agreements**

### COVERAGE E-1 - HOSTILE FIRE AND BUILDING EQUIPMENT

We will pay those sums that the insured becomes legally obligated to pay as loss because of:

(1) Bodily injury sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

(2) Bodily injury, property damage or environmental damage caused by heat, smoke or fumes from a hostile fire.

## COVERAGE E-2 - PRODUCTS POLLUTION AND EXPOSURE LIABILITY

We will pay those sums that the insured becomes legally obligated to pay as loss because of bodily injury, property damage or environmental damage resulting from pollution conditions caused by your product and included in the products-completed operations hazard.

We will also pay those sums that the insured becomes legally obligated to pay as loss because of bodily injury or property damage resulting from ingestion or inhalation of, contact with, or exposure to, any fumes, dust, particles, vapors, liquids or other substances originating from your product and included in the products-completed operations hazard.

## COVERAGE E-3 - CONTRACTORS POLLUTION LIABILITY

We will pay those sums that the insured becomes legally obligated to pay as loss because of bodily injury, property damage, or environmental damage resulting from pollution conditions caused by your work.

## COVERAGE E-4 - TRANSPORTED CARGO

We will pay those sums that the insured becomes legally obligated to pay as loss because of bodily injury, property damage or environmental damage resulting from pollution conditions caused by an occurrence during the transportation of cargo.

## COVERAGE E EMERGENCY RESPONSE COSTS

We will pay emergency response costs resulting from pollution conditions caused by: (a) heat, smoke or fumes from a hostile fire, provided Coverage E-1 is purchased; (b) your product, provided Coverage E-2 is purchased; (c) your work, provided Coverage E-3 is purchased; or (d) an occurrence during the transportation of cargo, provided Coverage E-4 is purchased. Emergency response costs must be first incurred by the insured and reported to us during the policy period. The insured must report the emergency response costs to us, in writing and in accordance with Section IV.2. of the Policy and such pollution conditions must be unexpected and unintended from the standpoint of the insured.

Each of the following paragraphs is applicable to Coverages E-1 through E-4:

a. We will have the right and duty to defend the insured, to the extent applicable under each coverage of Section E-1 through E-4, against any suit seeking damages for bodily injury, property damage or environmental damage. However, we will have no duty to defend the insured against any suit seeking those damages to which this insurance does not apply. We may, at our discretion, investigate any occurrence and settle any claim or suit that may result. But:

(1) The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B, medical expenses under Coverage C, or loss under Coverages D or E.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A, B and E.

b. This insurance applies to bodily injury, property damage, or environmental damage only if:

(1) The bodily injury, property damage, or environmental damage is caused by an occurrence that takes place in the coverage territory; and

(2) The bodily injury, property damage or environmental damage occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of SECTION II - WHO IS AN INSURED and no employee authorized by you to give or receive notice of an occurrence or claim, knew that the bodily injury, property damage or environmental damage had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the policy period, that the bodily injury, property damage or environmental damage occurred, then any continuation, change or resumption of such bodily injury, property damage or environmental damage during or after the policy period will be deemed to have been known prior to the policy period.

c. Bodily injury, property damage or environmental damage which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of SECTION II - WHO IS AN INSURED or any employee authorized by you to give or receive notice of an occurrence or claim, includes any continuation, change or resumption of that bodily injury, property damage, or environmental damage after the end of the policy period.

d. Bodily injury, property damage or environmental damage will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of SECTION II - WHO IS AN INSURED or any employee authorized by you to give or receive notice of an occurrence or claim:

(1) Reports all, or any part, of the bodily injury, property damage or environmental damage to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the bodily injury, property damage or environmental damage; or

(3) Becomes aware by any other means that bodily injury, property damage or environmental damage has occurred or has begun to occur.

e. All bodily injury, property damage or environmental damage caused by continuous or repeated exposure to substantially the same general harmful conditions or substances, which results in progressive, indivisible bodily injury, property damage or environmental damage over a period of days, weeks, months or longer, shall be deemed to have occurred solely on the date of first exposure to such conditions or substances.

f. If the date of first exposure is before the inception date of the first Commercial General Liability and Pollution Legal Liability policy we issue to you, or the date of first exposure can not be determined, and the bodily injury, property damage or environmental damage continues during this policy period, then the date of first exposure will be deemed to have occurred only on the inception date of the first Commercial General Liability and Pollution Legal Liability policy we issue to you.

g. Damages because of bodily injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.

## 2. Exclusions

This insurance does not apply to:

a. Expected or Intended Injury

Bodily injury, property damage or environmental damage expected or intended from the standpoint of the insured. This exclusion does not apply to bodily injury or property damage resulting from the use of reasonable force to protect persons or property.

b. Contractual Liability

Bodily injury, property damage, environmental damage or emergency response costs for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury**, **property damage** or **environmental damage** occurs, or the **emergency response costs** are incurred, subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **insured** are deemed to be damages because of **bodily injury** or **property damage**, provided:

   (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and

   (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Workers Compensation and Similar Laws**

   Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

d. **Employer's Liability**

   **Bodily injury** to:

   (1) An employee of the insured, arising out of and in the course of:

      (a) Employment by the insured; or

      (b) Performing duties related to the conduct of the insured's business; or

   (2) The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph (1) above.

   This exclusion applies:

   (1) Whether the insured may be liable as an employer or in any other capacity; and

   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

   This exclusion does not apply to liability assumed by the insured under an **insured contract**.

e. **Aircraft, Auto or Watercraft**

   **Bodily injury**, **property damage**, **environmental damage** or **emergency response costs** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the **occurrence** which caused the **bodily injury**, **property damage**, **environmental damage** or **emergency response costs** involved the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft that is owned or operated by or rented or loaned to any insured.

   This exclusion does not apply to Coverage E-4, except with respect to **bodily injury**, **property damage**, **environmental damage** or **emergency response costs** arising from the transportation of cargo by a third-party carrier (a) that is not caused by an **occurrence** arising from the insured's negligence and (b) that involves:

(1) The delivery of any cargo into a wrong receptacle or to a wrong address; or

(2) The erroneous delivery of one type of cargo for another;

if, under (1) or (2), the bodily injury, property damage or environmental damage occurs or the emergency response costs are incurred after such operations have been completed or abandoned at the site of such delivery.

Operations which may require further service, maintenance, correction, repair or replacement because of performance at the wrong address or because of any error, defect or deficiency, but which are otherwise completed, will be deemed completed.

f. War

Bodily injury, property damage, environmental damage or emergency response costs arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

g. Damage to Property

Property damage or environmental damage to:

(1) Property you own, rent, or occupy including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the property damage or environmental damage arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage or environmental damage arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to property damage or environmental damage included in the products-completed operations hazard.

h. Damage to Your Product

Property damage or environmental damage to your product arising out of it or any part of it.

i. Damage to Your Work

Property damage or environmental damage to your work arising out of it or any part of it and included in the products-completed operations hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

j.  **Damage to Impaired Property or Property Not Physically Injured**

Property damage or environmental damage to impaired property or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in your product or your work; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to your product or your work after it has been put to its intended use.

k.  **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) Your product;

(2) Your work; or

(3) Impaired property;

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

l.  **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

m.  **Nuclear Material and Radioactivity**

(1) Bodily injury, property damage, environmental damage or emergency response costs arising from the radioactive, toxic or explosive properties of nuclear material, and for which the United States Department of Energy or any other governmental authority has indemnified the insured, or for which the Price Anderson Act provides protection for the insured; or

(2) Bodily injury, property damage, environmental damage or emergency response costs arising out of (i) your product and (ii) the actual, alleged or threatened exposure of persons or property to any radioactive matter.

n.  **Asbestos**

Solely with respect to Coverages E-1 and E-2:

(1) Bodily injury arising out of the presence, ingestion or inhalation of, or exposure to, asbestos in any form; or

(2) Property damage arising out of the presence of, or exposure to, asbestos in any form.

o.  **Lead**

Solely with respect to Coverages E-1 and E-2

(1) Bodily injury arising out of the presence, ingestion, inhalation or absorption of, or exposure to, lead in any form; or

(2) Property damage arising out of the presence of, or exposure to, lead in any form.

p.  **Internal Expenses**

Costs, charges or expenses incurred by the insured for goods supplied or services performed by the staff or salaried employees of the insured, or its parent, subsidiary or affiliate, except for emergency response costs, or unless such costs, charges or expenses are incurred with our prior written approval at our sole discretion.

q.  **Criminal Fines, Penalties and Assessments**

Any criminal fines, criminal penalties or criminal assessments.

r.  **Damage to Conveyance**

Property damage to any conveyance utilized during the transportation of cargo. This exclusion does not apply to a claim made by a third-party carrier for such property damage to their conveyance arising from the insured's negligence.

s.  **Third-Party Carrier**

Loss incurred by a third-party carrier for bodily injury, property damage, environmental damage, or emergency response costs. This exclusion does not apply to an occurrence arising from the insured's negligence.

t.  **Facilities or Maintenance Operations**

Solely with respect to Coverage E-3, bodily injury, property damage, environmental damage or emergency response costs arising from facilities operated by you or on your behalf, including associated maintenance operations.

u.  **Non-Owned Site Disposal**

Bodily injury, property damage, environmental damage or emergency response costs arising from the final disposal of material and/or substances of any type (including but not limited to any waste) at any site or location which is not owned, leased or rented by you, including loading or unloading at such site or location. However, this exclusion does not apply to bodily injury, property damage, environmental damage or emergency response costs arising from unloading operations that are performed during the policy period at such site or location.

## SUPPLEMENTARY PAYMENTS - COVERAGES A, B and E

1.  We will pay, with respect to any claim we investigate or settle, or any suit against an insured we defend under Coverages A, B and E:

a.  All expenses we incur.

b.  Up to $1000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

      (2) Property damage or environmental damage to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your employees, volunteer workers, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  b. Any person (other than your employee or volunteer worker) or any organization while acting as your real estate manager.

  c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

  d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Policy.

  e. Any subsidiary, associated, affiliated or allied company or corporation, including subsidiaries thereof, of which you have more than 50% ownership interest as of the inception date of this Policy.

3. Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority. interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  a. Coverage under this provision is afforded only (a) until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier, (b) provided that you give us written notification within 180 days of the date of such acquisition or formation or before the end of the policy period, whichever is earlier, and (c) an additional premium to be charged at our discretion, determined by the rates utilized at policy inception, is paid when due;

  b. Coverages A and E do not apply to bodily injury, property damage, environmental damage or emergency response costs that occurred before you acquired or formed the organization; and

  c. Coverage B does not apply to personal and advertising injury arising out of an offense committed before you acquired or formed the organization.

4. Any person or organization, other than a third party carrier, with whom you agreed to include as an insured, because of a written contract, written agreement or permit, but only with respect to bodily injury, property damage, environmental damage, emergency response costs or personal and advertising injury caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf, arising out of your operations, your work, equipment or premises leased, rented or owned by you, or your products which are distributed or sold in the regular course of a vendor's business, however:

As respects vendors, this insurance does not apply to:

  a. Bodily injury, property damage, environmental damage or emergency response costs for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

  b. Any express warranty unauthorized by you;

    c. Any physical or chemical change in the product made intentionally by the vendor;

    d. Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

    e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

    f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

    g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

    h. Bodily injury, property damage, environmental damage or emergency response costs arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

        (1) The exceptions contained in Sub-paragraphs d. or f. above; or

        (2) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

As respects a manager or lessor of premises, a lessor of leased equipment, or a mortgagee, assignee, or receiver, this insurance does not apply to:

        (a) Any occurrence which takes place after the equipment lease expires or you cease to be a tenant.

        (b) Structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessor of premises, or mortgagee, assignee, or receiver.

5. Any person or organization that has at least a 50% controlling interest in you but only with respect to bodily injury, property damage, environmental damage, emergency response costs or personal and advertising injury caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf, arising out of their financial control of you.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company unless a current or past partnership, joint venture, or limited liability company is an insured pursuant to paragraphs 1. through 5. above.

Applicable to Coverage D

Each of the following is an insured under Coverage D:

The Named Insured designated in the declarations and any past or present director, officer, partner, member or employee thereof, while acting within the scope of his or her duties as such and any customer with whom you have agreed in writing to include, prior to a claim being made or loss being incurred with respect to such customer, as an insured for loss arising from your storage, handling, treatment, processing or disposal of their product or waste on any insured property.

## SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;

   b.  Claims made or suits brought; or

   c.  Persons or organizations making claims or bringing suits.

2.  The General Aggregate Limit is the most we will pay for the sum of:

   a.  Medical expenses under Coverage C;

   b.  Damages under Coverage A except damages because of bodily injury or property damage included in the products-completed operations hazard;

   c.  Damages under Coverage B;

   d.  Loss under Coverage D; and

   e.  Loss under Coverage E except damages because of bodily injury, property damage, environmental damage or emergency response costs included in the products-completed operations hazard.

The General Aggregate Limit shall apply separately to occurrences and loss on or at a single location owned or rented by you and separately as to each other operation or project away from locations owned or rented by you.

3.  The Products-Completed Operations Aggregate Limit is the most we will pay under Coverages A, E-2 and E-3 for damages because of bodily injury, property damage, environmental damage or emergency response costs included in the products-completed operations hazard.

4.  Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all personal and advertising injury sustained by any one person or organization.

5.  Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a.  Damages under Coverage A; and

   b.  Medical expenses under Coverage C

because of all bodily injury and property damage arising out of any one occurrence.

6.  Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of property damage to any one premises, while rented to you, or in the case of damage by fire, lightning or explosion while rented to you or temporarily occupied by you with permission of the owner.

7.  Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of bodily injury sustained by any one person.

8.  Subject to 2. above, the Each Loss Limit Applicable to Coverage D is the most we will pay for loss under Coverage D for all loss because of bodily injury, property damage, clean-up costs and emergency response costs arising out of the same, related, or continuous pollution conditions.

9.  Subject to 2. or 3. above, whichever applies, the Each Loss Limit Applicable to Coverage E is the most we will pay for loss because of all bodily injury, property damage, environmental damage and emergency response costs arising out of any one occurrence.

10. The Limits of Insurance apply in excess of the Deductible amounts shown in Item 4. of the Declarations. The Deductible amount applies as follows:

   a.  Under Coverage D, to all loss arising out of a pollution condition or the same, related, or continuous pollution conditions.

b. Under Coverage A or E, to all damages because of bodily injury, property damage, environmental damage or emergency response costs as the result of any occurrence, regardless of the number of persons or organizations who sustain damages because of that occurrence.

We may pay any part or all of the deductible amount to effect settlement of any claim or loss and upon notification, you shall promptly reimburse us for such part of the Deductible. Subject to **SECTION IV - CONDITIONS,** Paragraph 15. Multiple Coverages, if the same claim or occurrence results in coverage under more than one Coverage of this Policy, only the highest Deductible under all coverages applicable to the claim or occurrence shall apply.

11. The Limits of Insurance of this Policy apply to the entire policy period. If the policy period is extended after issuance for an additional period, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or that of the insured's estate will not relieve us of our obligations under this Policy.

2. **Duties in the Event of Occurrence, Offense, Claim, Suit or Emergency Response Costs**

   **Applicable to Coverages A, B, C and E**

   a. When an occurrence or offense is known to: (i) you, if you are an individual; (ii) a partner, if you are a partnership; (iii) a member, if you are a limited liability company; or (iv) an executive officer or risk manager, if you are a corporation, you must see to it that we are notified as soon as practicable of an occurrence or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the occurrence or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the occurrence or offense.

   b. If a claim is made or suit is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or suit and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or suit as soon as practicable. However, this requirement will not be considered breached unless the breach occurs after such claim or suit is known to (i) you, if you are an individual; (ii) a partner, if you are a partnership; (iii) a member, if you are a limited liability company; or (iv) an executive officer or risk manager, if you are a corporation.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a suit;

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the suit; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid or emergency response costs, without our consent.

e. All Notices shall be made in writing and addressed to:

AIG Claims
P.O. Box 305904
Nashville, TN 37230-5904
Fax: 866-260-0104
Email: SeverityFNOL@aig.com

or other address we substitute in writing.

**Applicable to Coverage D**

a. In the event of a claim, the insured shall notify us as soon as practicable but in any event during the policy period or during the extended reporting period, if applicable. The insured shall furnish information at our request. When a claim has been made, the insured shall forward the following to us as soon as practicable:

(1) All reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the claimant(s) and available witnesses;

(2) All demands, summonses, notices or other process or papers filed with a court of law, administrative agency or an investigative body; and

(3) Other information in the possession of the insured or its hired experts which we reasonably deem necessary.

b. In the event of pollution conditions, the insured shall give written notice of such pollution conditions: (a) with respect to Coverage D-1, as soon as practicable and (b) with respect to Coverage D-2, no later than thirty (30) business days following the discovery of such pollution conditions by a responsible insured. Notice under all coverages shall include, at a minimum, information sufficient to identify the Named Insured, the insured property, the names of persons with knowledge of the pollution conditions and all known and reasonably obtainable information regarding the time, place, cause, nature of and other circumstances of the pollution conditions.

c. The insured must cooperate with us and offer all reasonable assistance in the investigation and defense of claims. We may require that the insured submit to examination under oath, and attend hearings, depositions and trials. In the course of investigation or defense, we may require written statements or the insured's attendance at meetings with us. The insured must assist us in effecting settlement, securing and providing evidence and obtaining the attendance of witnesses.

d. All notices under this Section shall be made in writing and addressed to:

AIG Claims
P.O. Box 305904
Nashville, TN 37230-5904
Fax: 866-260-0104
Email: SeverityFNOL@aig.com

or other address we substitute in writing.

e. No insured shall voluntarily enter into any settlement, or make any payment or assume any obligation, unless in response to an emergency or pursuant to environmental laws that require immediate remediation of pollution conditions, without our consent, which shall not be unreasonably withheld, except at the insured's own cost.

### Applicable to Emergency Response Costs under Coverages D-2 and E

When emergency response costs have been incurred, the insured shall forward to us as soon as practicable, all information including but not limited to: the cause, commencement and location of the pollution conditions, technical reports, laboratory data, field notes, expert reports, investigations, data collected, invoices, regulatory correspondence or any other documents relating to such emergency response costs.

### Applicable to All Coverages

Failure to timely notify us of an occurrence or an offense which may result in a claim or to timely notify us of a claim or suit, shall not automatically invalidate coverage under this Policy; provided, however, that all of the following conditions are met:

a. Timely notice must have been inadvertently provided to another insurer; and

b. Notice must be provided to us as soon as possible once you become aware that such notice was inadvertently provided to another insurer; and

c. Such subsequent notice to us must not, in our sole discretion: (i) materially prejudice our defense or claims handling of any claim or suit; or (ii) materially increase our costs for any claim or suit.

Solely as respects Coverage D, in any event, notice must be provided to us during the policy period or during the extended reporting period, if applicable.

3. **Legal Action Against Us**

### Applicable to Coverages A, B, C and E

No person or organization has a right under this Policy:

a. To join us as a party or otherwise bring us into a suit asking for damages from an insured; or

b. To sue us on this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### Applicable to Coverages D

No third-party action shall lie against us, unless as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and us.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by the Policy. No person or organization shall have any right under this Policy to join us as a party to any action against the insured to determine the insured's liability, nor shall we be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve us of any of our obligations hereunder.

## 4. Other Insurance

### Applicable to Coverages A, B and E

If other valid and collectible insurance is available to the insured for damages or loss we cover under Coverages A, B or E of this Policy, our obligations are limited as follows:

### a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

However, regardless of whether b. below applies, in the event that a written contract or agreement or permit requires this insurance to be primary for any person or organization with whom you agreed to insure and such person or organization is an insured under this policy, we will not seek contributions from any such other insurance issued to such person or organization.

### b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for your work;

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is Insurance purchased by you to cover your liability as a tenant for property damage to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the damages or loss arises out of the maintenance or use of aircraft, autos or watercraft to the extent not subject to Exclusion g. of Coverage A.

(2) Any other insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverage A, B or E to defend the insured against any suit if any other insurer has a duty to defend the insured against that suit. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the damages or loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the damages or loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining damages or loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Policy.

### c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this

each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the damages or loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**Applicable to Coverage D**

You shall promptly upon our request provide us with copies of all policies potentially applicable to loss covered by Coverage D. If other valid and collectible insurance is available to the insured for loss covered under the terms and conditions of Coverage D, our obligation to the insured shall be as follows:

a. This insurance is primary, and our obligations are not affected unless any of the other insurance is also primary. In that case, we will share with all such other insurance by the method described in Subparagraph b. below.

b. If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Representations**

By accepting this Policy, you agree:

a. The statements in the Declarations and application for this Policy are accurate and complete;

b. Those statements are based upon representations you made to us;

c. We have issued this Policy in reliance upon your representations; and

d. This Policy embodies all agreements existing between the insured and us or any of our agents relating to this insurance.

Except with respect to coverage provided by **SECTION I - COVERAGES, COVERAGE D - POLLUTION LEGAL LIABILITY**, if you unintentionally fail to disclose to us, prior to the inception date, all existing hazards at the inception date of this Policy, we shall not deny coverage under the applicable Coverage section because of such unintentional failure.

6. **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or suit is brought.

Solely with respect to Coverage D, this condition shall not apply to an insured that is a parent, subsidiary or affiliate of you.

7. **Transfer of Rights of Recovery Against Others to Us**

Applicable to Coverages A, B, C and E

If the insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

**Applicable to Coverage D**

In the event of any payment under this Policy, we shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights, including without limitation, assignment of the insured's rights against any person or organization who caused pollution conditions on account of which we made any payment under this Policy. The insured shall do nothing to prejudice our rights under this paragraph subsequent to loss. Any recovery as a result of subrogation proceedings arising out of the payment of loss covered under this Policy shall accrue first to the insured to the extent of any payments in excess of the limit of coverage; then to us to the extent of our payment under the Policy; and then to the insured to the extent of its Deductible. Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

**8. When We Do Not Renew**

If we decide not to renew this Policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than sixty (60) days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

**9. Cancellation**

This Policy may be cancelled by the first Named Insured by surrender thereof to us or any of our authorized agents or by mailing to us written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by us only for the reasons stated below by mailing to the first Named Insured at the mailing address shown in the Declarations, written notice stating when not less than sixty (60) days (ten (10) days for nonpayment of premium) thereafter such cancellation shall be effective. Proof of mailing of such notice shall be sufficient proof of notice.

a. Material misrepresentation by the insured;

b. The insured's failure to comply with the material terms, conditions or contractual obligations under this Policy, including failure to pay any premium or Deductible when due;

c. A change in operations at an insured property during the policy period which materially increases a risk covered under this Policy.

The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the first Named Insured or by us shall be equivalent to mailing. If the first Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If we cancel, earned premium shall be computed pro rata. Premium adjustment may be either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**10. Sole Agent**

The Named Insured first listed in Item 1. of the Declarations shall act on behalf of all other insureds, if any, for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of cancellation or nonrenewal, and the exercise of the rights provided in **SECTION V - EXTENDED REPORTING PERIOD - COVERAGE D.**

**11. Assignment**

103124 (05/14)
CI5506

This Policy may not be assigned without our prior written consent. Assignment of interest under this Policy shall not bind us until our consent is endorsed thereon.

## 12. Changes

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop us from asserting any rights under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

## 13. Independent Counsel - Applicable to Coverages A, B, D and E

In the event the insured is entitled by law to select independent counsel to oversee our defense of a suit or claim at our expense, the attorney fees and all other litigation expenses we must pay to that counsel are limited to the rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar claims or suits in the community where the claim or suit arose or is being defended.

Additionally, we may exercise the right to require that such counsel have certain minimum qualifications with respect to their competency including experience in defending claims or suits similar to the one pending against the insured and to require such counsel to have errors and omissions insurance coverage. As respects any such counsel, the insured agrees that counsel will timely respond to our requests for information regarding the claim or suit.

Furthermore, the insured may at any time, by the insured's signed consent, freely and fully waive these rights to select independent counsel.

## 14. Service of Suit

It is agreed that in the event of failure of us to pay any amount claimed to be due hereunder, we, at the request of the insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Legal Department, AIG Specialty Insurance Company, 175 Water Street, New York, NY 10038, or his or her representative, and that in any suit instituted against us upon this contract, we will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner, Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named Counsel as the person to whom the said officer authorized to mail such process or a true copy thereof.

## 15. Multiple Coverages

Any loss, claim or suit or part thereof arising out of the same event, which may be alleged as covered under any of the Coverages A, B, C, D-1, D-2 or E shall not be subject to coverage under such Coverage parts if we have accepted coverage, provided a defense or coverage has been held to apply for any other loss, claims or suits or part thereof arising out of the same event under any of the other Coverages A, B, C, D-1, D-2 or E of this Policy. This condition does not apply to any claim for medical expenses under Coverage C caused by bodily injury which is covered under Coverage A or Coverage E.

16. **Our Rights and Your Duties in the Event of Pollution Conditions (Applicable to Coverages D and E)**

We shall have the right but not the duty to clean up or mitigate pollution conditions, upon receiving notice as provided in Section IV.2., of this Policy. Any sums expended in taking such action by us will be deemed incurred or expended by the insured and shall be applied against the limits of coverage and deductible under this Policy. You shall have the duty to clean up or mitigate pollution conditions to the extent required by environmental laws, by retaining competent professional(s) or contractor(s) mutually acceptable to you and us. We shall have the right but not the duty to review and approve all aspects of any such clean up. You shall notify us of actions and measures taken pursuant to this paragraph.

17. **Right of Access and Inspection**

To the extent the insured has such rights, our authorized representatives shall have the right and opportunity, but not the obligation to interview persons employed by the insured and to inspect at any reasonable time, during the policy period or thereafter, the insured property. Neither we nor our representatives shall assume any responsibility or duty to the insured or to any other party, person or entity, by reason of such right or inspection. Neither our right to make inspections, sample and monitor, nor the actual undertaking thereof nor any report thereon shall constitute an undertaking on behalf of the insured or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practices or are in compliance with any law, rule or regulation. You agree to provide appropriate personnel to assist our representatives during any inspection.

18. **Access to Information (Applicable to Coverages D and E)**

You agree to provide to us with access to any information developed or discovered by the insured concerning loss covered under this Policy, whether or not deemed by the insured to be relevant to such loss, and to provide us access to interview any insured and review any documents of the insured.

19. **Concealment or Fraud (Applicable to Coverage D)**

Coverage D shall be void if, whether before or after clean-up costs are incurred or a claim is first made, you have willfully concealed or misrepresented any fact or circumstance material to the granting of such coverage, the description of the insured property, or the interest of the insured therein.

## SECTION V - EXTENDED REPORTING PERIOD - COVERAGE D

You shall be entitled to an automatic extended reporting period (as described in paragraph A. below), and (with certain exceptions as described in Paragraph B. below) be entitled to purchase an optional extended reporting period for Coverage D, upon termination of coverage as defined in Paragraph B.3. of this Section. If you renew this policy, you shall be entitled to a renewal extended reporting period (as described in paragraph C. below). Neither the automatic, the optional nor the renewal extended reporting period shall reinstate or increase any of the limits of liability of this Policy.

A. **Automatic Extended Reporting Period**

Provided (i) that you have not renewed this policy or purchased any other insurance to replace this insurance which applies to a claim otherwise covered hereunder and (ii) you have not purchased the optional extended reporting period available under Paragraph B. below, you shall have the right to the following: a period of sixty (60) days following the effective date of such termination of coverage in which to provide written notice to us of claims first made against an insured during the policy period.

A claim first made against an insured during the policy period and reported within the automatic extended reporting period will be deemed to have been made on the last day of the policy period, provided that the claim arises from pollution conditions that first commenced before the end of the policy period and is otherwise covered by this Policy. No part of the automatic extended reporting period shall apply if the optional extended reporting period is purchased.

**B. Optional Extended Reporting Period**

You shall be entitled to purchase an optional extended reporting period upon termination of coverage as defined herein (except in the event of nonpayment of premium) and provided you have not renewed this policy or purchased any other insurance to replace this insurance, as follows:

1. A claim first made against an insured and reported within the optional extended reporting period, if purchased in accordance with the provisions contained in Paragraph 2. below, will be deemed to have been made on the last day of the policy period, provided that the claim arises from pollution conditions that first commenced before the end of the policy period and is otherwise covered by this Policy.

2. We shall issue an endorsement providing an optional extended reporting period of up to forty (40) months from termination of coverage hereunder for all insured properties and non-owned locations, if applicable, or any specific insured property or non-owned location, provided that you:

   (a) make a written request for such endorsement to us which is received within thirty (30) days after termination of coverage as defined herein; and

   (b) pay the additional premium when due. If that additional premium is paid when due, the extended reporting period may not be cancelled, provided that all other terms and conditions of the Policy are met.

3. Termination of coverage occurs at the time of cancellation or nonrenewal of this Policy by you or us, or at the time of our deletion of a location which previously was an insured property or non-owned location.

4. The optional extended reporting period is available to you for not more than 200% of the full Policy premium stated in the Declarations.

**C. Renewal Extended Reporting Period**

Provided that you have renewed this policy you shall have the right to the following: a period of sixty (60) days following the expiration of the policy period in which to provide written notice to us of claims first made against an insured within sixty (60) days prior to the expiration of the policy period.

A claim first made against an insured within sixty (60) days prior to the expiration of the policy period and reported within the renewal extended reporting period will be deemed to have been made on the last day of the policy period of this Policy.

## SECTION VI - DEFINITIONS

1. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

   For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. **Auto** means

   (a) A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.

(b) Any other land vehicle that is subject to a compulsory or financial responsibility law in the state where it is licensed or principally garaged.

However, auto does not include mobile equipment.

3. **Bodily injury** means bodily injury, physical injury, sickness, disease, mental anguish, shock or emotional distress, sustained by any person, including death resulting from any of these at any time.

4. **Cargo** means the insured's goods, products or wastes transported by the insured or by third-party carriers properly licensed to transport such goods, products or wastes.

5. **Claim** means:

   Applicable to Coverages A or B

   A written demand received by the insured alleging liability or responsibility on the part of the insured.

   Applicable to Coverage D or E

   A written demand seeking a remedy or alleging liability or responsibility on the part of the insured for loss.

6. **Certified industrial hygienist** means a licensed professional as established by the American Board of Industrial Hygiene, mutually agreed upon by you and us. We may also exercise the right to require that such certified industrial hygienist have certain minimum qualifications with respect to their competency, including experience with similar microbial matter remediation.

7. **Clean-up costs** means reasonable and necessary expenses, including legal expenses incurred with our written consent which consent shall not be unreasonably withheld or delayed, for the investigation, removal, abatement or remediation including associated monitoring, or disposal of soil, surfacewater, groundwater, microbial matter, legionella pneumophila or other contamination:

   a. To the extent required by environmental laws; or

   b. With respect to microbial matter, in the absence of an applicable environmental law, to the extent recommended in writing by a certified industrial hygienist or a registered occupational hygienist or registered occupational hygiene technologist;

   c. That have been actually incurred by the government or any political subdivision of the United States of America or any state thereof or Canada or any province thereof, or by third parties; or

   d. With respect to legionella pneumophila, in the absence of an applicable environmental law, to the extent required in writing by the United States' Center for Disease Control or Public Health Agency of Canada or local health department.

   Clean-up costs also include restoration costs.

8. **Conveyance** means any auto, railcar, train, watercraft or aircraft used in the transportation of cargo. A conveyance does not include pipelines.

9. **Coverage territory** means:

   Applicable to Coverages A, B and C

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All other parts of the world if the injury or damages arises out of:

  (1) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

  (2) **Personal and advertising injury offenses that take place through the Internet or similar electronic means of communication;**

  Provided that, with respect to (1) and (2) above, the insured's responsibility to pay damages is determined in a suit on the merits, in the territory described in a. above or in a settlement we agree to.

  (3) Goods or products made or sold by you in the territory described in a. above, but

    (a) This insurance does not serve to satisfy any requirement in any country that requires the purchase of locally admitted insurance; and

    (b) With respect to claims or suits instituted in courts in other than the territory described in a. above, we shall have the right, but not the duty to:

      (i) Defend any such suit; or

      (ii) Make such investigation, negotiation and settlement of any such claim or suit as we deem expedient. You, under our supervision, will make or cause to be made such investigation and defense as may be reasonably necessary for any claim or suit, which we elect not to investigate, settle or defend. Subject to prior authorization by us, you will effect, to the extent possible, such settlements as we and you deem prudent. We will reimburse you for the cost of any such investigation, settlement or defense, in currency of the United States of America at the rate of exchange prevailing on the date of payment.

    (c) We assume no responsibility for furnishing certificates or evidence of insurance or bonds in any country in which we are not an admitted or authorized insurer.

    (d) We will not be liable for any fine or penalty imposed on you for:

      (i) Your failing to insure in an admitted or authorized insurer; or

      (ii) Any other failure of yours to comply with an insurance law of a county, state, province, territory or possession in which we are not an admitted or authorized insurer.

## Applicable to Coverage D

The United States of America (including its territories and possessions), and Canada.

## Applicable to Coverage E

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above and further provided the insured's responsibility to pay damages is determined in a suit on the merits, in the territory described in a. above or in a settlement we agree to;

c. All other parts of the world if the injury or damages arises out of goods or products made or sold by you in the territory described in a. above, but;

  (1) This insurance does not serve to satisfy any requirement in any country that requires the purchase of locally admitted insurance; and

(2) With respect to claims or suits instituted in courts in other than the territory described in a. above, we shall have the right, but not the duty to:

    (i) Defend any such suit; or

    (ii) Make such investigation, negotiation and settlement of any such claim or suit as we deem expedient. You, under our supervision, will make or cause to be made such investigation and defense as may be reasonably necessary for any claim or suit, which we elect not to investigate, settle or defend. Subject to prior authorization by us, you will effect, to the extent possible, such settlements as we and you deem prudent. We will reimburse you for the cost of any such investigation, settlement or defense, in currency of the United States of America at the rate of exchange prevailing on the date of payment.

(3) We assume no responsibility for furnishing certificates or evidence of insurance or bonds in any country in which we are not an admitted or authorized insurer.

(4) We will not be liable for any fine or penalty imposed on you for:

    (i) Your failing to insure in an admitted or authorized insurer; or

    (ii) Any other failure of yours to comply with an insurance law of a county, state, province, territory or possession in which we are not an admitted or authorized insurer.

10. **Emergency response costs** means reasonable and necessary expenses, including legal expenses incurred with our written consent, which consent shall not be unreasonably withheld or delayed, incurred by you or third parties to respond to pollution conditions that necessitate immediate action; and are incurred within seventy two (72) hours of the first commencement of such pollution conditions; or as pre-approved by us in writing.

11. **Employee** includes a leased worker. Employee does not include a temporary worker, except with respect to Coverage D-1 (c.) wherein employee includes a temporary worker.

12. **Environmental Damage** means:

**Applicable to Coverages E-1, E-2 and E-4**

Physical damage to soil, surfacewater or groundwater caused by pollution conditions and giving rise to clean-up costs.

**Applicable to Coverage E-3**

a. Physical damage to soil, surfacewater or groundwater caused by pollution conditions and giving rise to clean-up costs; and

b. Solely with respect to microbial matter, physical damage to buildings or other structures caused by pollution conditions and giving rise to clean-up costs.

Environmental damage does not include property damage.

13. **Environmental laws** means any federal, state, provincial or local laws (including, but not limited to, statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to pollution conditions.

14. **Executive officer** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

15. **Extended reporting period** means either the automatic additional period of time or the optional additional period of time or the renewal period of time, whichever is applicable, in which to report claims following termination of coverage, as described in **SECTION V - EXTENDED REPORTING PERIOD** of this Policy.

16. **Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

17. **Impaired property** means tangible property, other than your product or your work, that cannot be used or is less useful because:

   a. It incorporates your product or your work that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of your product or your work; or

   b. Your fulfilling the terms of the contract or agreement.

18. **Insured contract** means:

   **Applicable to Coverages A and E**

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises in excess of thirty (30) consecutive days that indemnifies any person or organization for damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an **insured contract**;

   b. A sidetrack agreement;

   c. Any easement or license agreement;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for bodily injury, property damage or environmental damage to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

      Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (2) Under which the insured, if an architect, engineer or surveyor, assumes liability for any injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (1)(a) and (b) above and supervisory, inspection, architectural or engineering services.

   **Applicable to Coverage D**

   A written contract or agreement with your customer that indemnifies them for loss arising from your storage,

handling, treatment, processing or disposal of their product or waste on any insured property, or any other written contract or agreement submitted to and approved by us and listed on an endorsement to this Policy.

19. **Insured property means:**

   **Applicable to Coverage D-1**

   Each of the locations identified in the Schedule of Insured Property(ies) Endorsement attached to and made a part of this policy.

   **Applicable to Coverage D-2**

   A premise located in the coverage territory during the time that such premise is owned, occupied, rented or leased by the insured during the policy period.

20. **Leased worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. **Leased worker** does not include a temporary worker.

21. **Loading or unloading** means the handling of property:

   a.  After it is moved from the place where it is accepted for movement into or onto an aircraft, railcar, watercraft or auto;

   b.  While it is in or on an aircraft, railcar, watercraft or auto; or

   c.  While it is being moved from an aircraft, railcar, watercraft or auto to the place where it is finally delivered;

   but solely with respect to Coverages A, B and C, loading or unloading does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, railcar, watercraft or auto.

22. **Location** means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

23. **Loss means:**

   **Applicable to Coverage D-1**

   a.  Monetary awards or settlements of compensatory damages; where allowable by law, punitive, exemplary, or multiple damage; and civil fines, penalties, or assessments for **bodily injury** or **property damage**;

   b.  Costs, charges and expenses incurred in the defense, investigation or adjustment of claims for such compensatory damages or punitive, exemplary or multiple damages, and civil fines, penalties or assessments, or for clean-up costs;

   c.  Clean-up costs; or

   d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or suit, including actual loss of earnings up to $500 a day because of time off from work.

   **Applicable to Coverage D-2**

   a.  Monetary awards or settlements of compensatory damages; where allowable by law, punitive, exemplary, or multiple damage; and civil fines, penalties, or assessments for **bodily injury** or **property damage**;

**b.** Costs, charges and expenses incurred in the defense, investigation or adjustment of claims for such compensatory damages or punitive, exemplary or multiple damages, and civil fines, penalties or assessments;

**c.** Emergency response costs; or

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or suit, including actual loss of earnings up to $500 a day because of time off from work.

**Applicable to Coverage E**

**a.** Monetary awards or settlements of compensatory damages; where allowable by law, punitive, exemplary, or multiple damage; and civil fines, penalties, or assessments for bodily injury, property damage or environmental damage;

**b.** Clean-up costs; or

**c.** Emergency response costs.

24. **Microbial matter** means fungi, mold or mildew, whether or not such microbial matter is living.

25. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered autos;

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressor, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However mobile equipment does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered autos.

26. **Natural Resource Damage** means physical injury to or destruction of, including the resulting loss of value of, land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. 1801 et seq.), any state or local government, any foreign government, any Indian tribe, or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe.

27. **Non-owned location** means each of the locations identified in the Schedule of Non-Owned Locations(s) Endorsement attached to and made a part of this Policy.

28. **Nuclear material** means source material, special nuclear material or by-product material which have the meanings given them in the Atomic Energy Act.

29. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

30. **Personal and advertising injury** means injury, including consequential bodily injury, arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your advertisement;

   g. Infringing upon another's copyright, trade dress or slogan in your advertisement; or

   h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person provided such discrimination or humiliation:

      (1) is done without the direction, knowledge or consent of (i) any insured; or (ii) any executive officer, director, officer, stockholder, partner or member of any insured; and

      (2) is not directly or indirectly related to employment, former or prospective employment, termination of employment, or application for employment of any person or persons by any insured.

31. **Pollutants** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Pollutants shall include Microbial Matter and legionella pneumophila.

32. **Pollution conditions** means the discharge, dispersal, release or escape of pollutants into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts or concentrations discovered.

33. **Products - completed operations hazard:**

   a. Includes all bodily injury, property damage or environmental damage occurring away from premises you own or rent and arising out of your product or your work except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, your work will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed;

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site;

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include bodily injury , property damage or environmental damage arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

34. **Professional services** means those architectural, engineering, consulting, land surveying or landscape architecture services that are performed for a fee by you or on your behalf. **Professional services** does not include:

   a. Services for or associated with the management or operation of any facility by you or on your behalf.

   b. Any evaluation, consultation, opinion or advice given by you, or others for whom you are legally liable, in connection with your product; or

   c. Any actual construction, erection, demolition, dismantling, assembly, fabrication, installation or remediation services performed by you or on your behalf, including the means, methods, techniques, sequences and procedures employed in the performance of those operations by you or on your behalf.

35. **Property damage** means:

   **Applicable to Coverages A and B**

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

Applicable to Coverage D-1 a. and D-2 a.

a. Physical injury to or destruction of tangible property, other than tangible property owned or rented by or in the care, custody or control of the insured, including the resulting loss of use, but not diminution in value, thereof;

b. Loss of use but not diminution in value, of tangible property, other than tangible property owned or rented by or in the care, custody or control of the insured, that has not been physically injured or destroyed; or

c. Natural Resource Damage.

Applicable to Coverage D-1. b and c. and Coverage D-2 b.

a. Physical injury to or destruction of tangible property, other than tangible property owned or rented by or in the care, custody or control of the insured, including the resulting loss of use and diminution in value thereof;

b. Loss of use, but not diminution in value, of tangible property, other than tangible property owned or rented by or in the care, custody or control of the insured, that has not been physically injured or destroyed; or

c. Natural Resource Damage.

Applicable to Coverage E

a. Except with respect to Coverage E-4, physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it; or

c. Solely with respect to coverage E-4, physical injury to tangible property, including the resulting loss of use and diminution in value thereof. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

d. Natural Resource Damage.

In no event under this Policy shall property damage include clean-up costs or environmental damage.

For the purpose of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

36. Registered occupational hygienist and registered occupational hygiene technologist means a licensed professional as established by the Canadian Registration Board of Occupational Hygienist, mutually agreed upon by you and us. We may also exercise the right to require that such registered occupational hygienist and registered occupational hygiene technologist have certain minimum qualifications with respect to their competency, including experience with similar microbial matter remediation.

37. Responsible insured means your manager or supervisor responsible for environmental affairs, control or compliance, or any manager of the insured property, or any of your officers, directors or partners.

38. Restoration costs means reasonable and necessary costs incurred by the insured with our written consent, which consent shall not be unreasonably withheld or delayed, to repair, replace or restore real or personal property that is damaged during work performed in the course of incurring clean-up costs, whether or not such property is also damaged by pollution conditions, to substantially the same condition it was in prior to being damaged during work performed in the course of incurring clean-up costs. Restoration costs do not include costs associated with improvements or betterments.

39. **Suit** means a civil proceeding in which damages because of **bodily injury, property damage, environmental damage or personal and advertising injury** to which this insurance applies are alleged. **Suit** includes:

 a. An arbitration proceeding in which such damages or clean-up costs are claimed and to which the insured must submit or does submit with our consent; or

 b. Any other alternative dispute resolution proceeding in which such damages or clean-up costs are claimed and to which the insured submits with our consent.

40. **Temporary worker** means a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.

41. **Transportation** means the movement of cargo, beyond the boundaries of premises owned, rented, leased or occupied by you, by a conveyance while in due course of transit from the time of movement from its point of origin until its delivery to its final destination, including loading or unloading onto or from the conveyance. **Transportation** does not include cargo off-loaded from the conveyance, or cargo in or on a conveyance at rest for a period longer than seven (7) days prior to reaching its final destination.

42. **Underground Storage Tank** means any tank that has at least ten (10) percent of its volume below ground in existence at the inception date of the policy, or installed thereafter including associated underground piping connected to the tank.

43. **Volunteer worker** means a person who is not your employee, and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

44. **Your product means:**

 a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed by:

   (1) You;

   (2) Others trading under your name; or

   (3) A person or organization whose business or assets you have acquired; and

 b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

 **Your product includes:**

 a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

 b. The providing of or failure to provide warnings or instructions.

45. **Your work means:**

 a. Work or operations performed by you or on your behalf; and

 b. Materials, parts or equipment furnished in connection with such work or operations.

 **Your work includes:**

 a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

b. The providing of or failure to provide warnings or instructions.

The remainder of this page has been intentionally left blank. Policy Signature Page shall immediately follow.

## POLICY SIGNATURE PAGE

This Policy Signature Page,

forms a part of Policy No:  EG    15411971

IN WITNESS WHEREOF, the Insurer has caused this policy to be signed by its President, Secretary and Authorized Representative.

Secretary
AIG Specialty Insurance Company

President
AIG Specialty Insurance Company

This Policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurer, either below or on the Declarations page of the Policy.

Authorized Representative

86697 (11/13)
CI5428

AIG

## NOTICE OF LOSS/NOTICE OF CLAIM

<u>INSTRUCTIONS: PLEASE ATTACH ALL CORRESPONDENCE RELATING TO THIS NOTICE OF LOSS AND MAIL
COPIES OF THIS NOTICE TO THE ADDRESS BELOW:</u>

AIG Claims
P.O. Box 305904
Nashville, TN 37230-5904
Fax: 866-260-0104
Email: SeverityFNOL@aig.com

Date of Notice: _____

NAMED INSURED: SHIELD PACKAGING CO., INC

ADDRESS OF
INSURED:         99 UNIVERSITY ROAD
                 P.O. BOX 190
                 CANTON, MA 02021-0190
TELEPHONE: (      ) _____
CONTACT: _____

BROKER NAME:    JAMES B OSWALD COMPANY THE
                SUE-ANNE BACAN
BROKER
ADDRESS:        1100 SUPERIOR AVENUE
                SUITE 1500
                CLEVELAND, OH 44114
TELEPHONE: (      ) _____
CONTACT: _____

POLICY INFORMATION:
Policy Number: EG    15411971
Policy Period: From: February 1, 2016        To: February 1, 2017

Loss Information:
Loss Location: _____
_____

Date & Description of Loss: _____
_____
_____
_____
_____
_____

For AIG Use Only:
Date Claim Notice Received: _____
Date of Claim: _____
Company/Person Filing Suit (if applicable): _____

NOTE: *Any person who knowingly files a Statement of Claim containing any false or misleading information is subject to
criminal and civil penalties.*

CI1141 (09/00)

ENDORSEMENT NO. 1

This endorsement, effective 12:01 AM, February 1, 2016

Forms a part of Policy No:  EG     15411971

Issued to:  SHIELD PACKAGING CO., INC

By:  AIG SPECIALTY INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY AND
### POLLUTION LEGAL LIABILITY COVERAGE FORM

It is hereby agreed that in the event of cancellation by the Insured, the minimum earned premium for this Policy will be $43,509.

All other terms, conditions, and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

94277 (3/07)
CI3015

PAGE 1 OF 1

ENDORSEMENT NO. 2

This endorsement, effective 12:01 AM, February 1, 2016

Forms a part of Policy No: EG      15411971

Issued to:  SHIELD PACKAGING CO., INC

By:  AIG SPECIALTY INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

<u>NAMED INSURED</u>

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY COVERAGE FORM

It is hereby agreed that the following are added to Item 1. Named Insured of the Declarations:

SHIELD PACKAGING CO., INC.
SHIELD PACKAGING OF CALIFORNIA, INC.
HARRISON SPECIALTY CO., INC.

All other terms, conditions, and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

ENDORSEMENT NO. 3

This endorsement, effective 12:01 AM, February 1, 2016

Forms a part of Policy No: EG    15411971

Issued to:  SHIELD PACKAGING CO., INC

By:  AIG SPECIALTY INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WAIVER OF TRANSFER OF RIGHTS OF RECOVERY
## AGAINST OTHERS TO US ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY AND
### POLLUTION LEGAL LIABILITY COVERAGE FORM

It is hereby agreed as follows:

**SECTION IV - CONDITIONS, Paragraph 7. Transfer of Rights of Recovery Against Others to Us - Applicable to Coverages A, B, C and E is amended by the addition of the following at the end of such subparagraph:**

We waive any right of recovery we may have against the person or organization shown in the Schedule below because of payments we make under Coverage A, B, C and E for injury or damage arising out of your ongoing operations or your work done under a contract with that person or organization and included in the products-completed operations hazard. This waiver applies only to the person or organization shown in the Schedule below.

### SCHEDULE

**Name of Person or Organization:**
WHERE REQUIRED BY WRITTEN CONTRACT.

All other terms, conditions, and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

94283 (3/07)
CI3021

PAGE 1 OF 1

ENDORSEMENT NO. 4

This endorsement, effective 12:01 AM, February 1, 2016

Forms a part of Policy No: EG     15411971

Issued to:  SHIELD PACKAGING CO., INC

By:  AIG SPECIALTY INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COVERAGES A, B, C AND E ADDITIONAL INSURED -
MANAGER OR LESSOR OF PREMISES ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY COVERAGE FORM

SCHEDULE

**1.** Designation of Premises (Part Leased to You):
15-21 AND 99 UNIVERSITY ROAD, CANTON, MA 02021

**2.** Name of Manager or Lessor:
GEORGE P. BATES AND NANCY B. BATES

Solely as respects Coverages A, B, C and E, SECTION II - WHO IS AN INSURED is amended to include as an insured the person or organization shown in the Schedule above but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule above and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any occurrence which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessor shown in the Schedule above.

All other terms, conditions and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

95165 (7/07)
CI3129

PAGE 1 OF 1

This endorsement, effective 12:01 AM, February 1, 2016

Forms a part of Policy No: EG    15411971

Issued to:  SHIELD PACKAGING CO., INC

By:  AIG SPECIALTY INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**EMPLOYEE BENEFITS LIABILITY INSURANCE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY AND
POLLUTION LEGAL LIABILITY COVERAGE FORM

It is hereby agreed as follows:

I.  The following is added to SECTION I - COVERAGES:

COVERAGE - EMPLOYEE BENEFITS LIABILITY

LIMITS OF INSURANCE

| | |
|---|---|
| $1,000,000 | Each Wrongful Act or Series of Related Wrongful Acts |
| $1,000,000 | Each Annual Aggregate |

DEDUCTIBLE

| | |
|---|---|
| $1,000 | Each Wrongful Act or Series of Related Wrongful Acts |

A.  INSURING AGREEMENT

We will pay those sums which the Insured becomes legally obligated to pay as damages because of any claims against the Insured due to any wrongful act of the Insured, or any other person for whose acts the Insured is legally liable, in the administration of the insured's employee benefits program, as defined in Section VIII. of this endorsement. This insurance applies only if a claim for damages covered by this endorsement is first made against the Insured during the policy period or if purchased, the optional extended reporting period we provide under Section VI. of this endorsement. We have the right and duty to defend any suit against the Insured seeking those damages even if any of the allegations of the suit are groundless, false or fraudulent, and we may make such investigation and settlement of any claim or suit as we deem expedient. However, we will have no duty to defend the Insured against any suit seeking damages to which this insurance does not apply. Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

B.  EXCLUSIONS

This endorsement does not apply to:

1.  Any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination or humiliation;

2.  Bodily injury or to injury to or destruction of any tangible property, including the loss of use thereof;

3. Any claim for failure of performance of contract by an insurer;

4. Any claim based upon the insured's failure to comply with any law concerning workmen's compensation, unemployment insurance, social security or disability benefits;

5. Any claim based upon:

    a. failure of any investment(s) including but not limited to stock to perform as represented by an insured; or

    b. advice given by an insured to an employee to participate in any investment plan including but not limited to stock subscription plans.

6. Any sums which the insured shall become legally obligated to pay as loss because of any breach of fiduciary duty or because of any breach of fiduciary duty by any person for which the insured is legally responsible and arising out of the insured's activity as a fiduciary of any plan covered by this endorsement.

7. Any claim made against the insured based on or attributable to any failure or omission on the part of the insured to effect and maintain insurance or bonding for plan property or assets.

8. Damages arising out of wrongful termination of employment, discrimination or other employment-related practices.

II. For the purposes of coverage provided by this endorsement:

A. All references to **SUPPLEMENTARY PAYMENTS - COVERAGES A, B and E** are replaced by **SUPPLEMENTARY PAYMENTS - COVERAGES A, B, E and EMPLOYEE BENEFITS LIABILITY.**

B. Paragraphs 1.b. and 2. of the **SUPPLEMENTARY PAYMENTS** provision do not apply, and are deleted in their entirety with regard to this endorsement.

III. For the purposes of the coverage provided by this endorsement, **SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE** is deleted in its entirety and replaced by the following:

1. **LIMITS OF INSURANCE**

    a. The Limits of Insurance shown in this endorsement and the rules below fix the most we will pay regardless of the number of:

        (i) Insureds;

        (ii) Claims made or suits brought;

        (iii) Persons or organizations making claims or bringing suits;

        (iv) Wrongful acts; or

        (v) Benefits included in your employee benefits program.

    b. The Annual Aggregate Limit is the most we will pay for all damages because of wrongful acts committed in the administration of your employee benefits program.

c. Subject to the annual aggregate limit, the Each Wrongful Act or Series of Related Wrongful acts Limit is the most we will pay for all damages sustained by any one employee, including damages sustained by such employee's dependents and beneficiaries, as a result of a wrongful act or series of related wrongful acts.

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the employee benefits program.

The Limits of Insurance of this endorsement apply to the entire policy period. If the policy period is extended after issuance for an additional period, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

2. DEDUCTIBLE

a. The deductible amount shown in this endorsement shall be subtracted from the total amount of all sums which we are obligated to pay or incur on behalf of the insured for each wrongful act. The limits of insurance shall not be reduced by the amount of this deductible.

b. The terms of this insurance including those with respect to notice of claim or suit and our right to investigate and negotiate any such claim or suit, apply irrespective of the application of the deductible amount.

IV. For the purposes of the coverage provided by this endorsement, Paragraph 2. of SECTION IV - CONDITIONS is deleted in its entirety and replaced by the following:

2. Duties In the Event of a Wrongful Act, or Claim or Suit

a. You must see to it that we are notified as soon as practicable of a wrongful act which may result in a claim. To the extent possible, notice should include:

(i) What the wrongful act was and when it occurred; and

(ii) The names and addresses of anyone who may suffer damages as a result of the wrongful act.

b. If a claim is made or suit is brought against any insured, you must:

(i) Immediately record the specifics of the claim or suit and the date received; and

(ii) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or suit as soon as practicable.

c. You and any other involved insured must:

(i) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a suit;

(ii) Authorize us to obtain records and other information;

(iii) Cooperate with us in the investigation or settlement of the claim or defense against the suit; and

(iv) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of a wrongful act to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

V. For the purposes of the coverage provided by this endorsement, the following condition is added to **SECTION IV - CONDITIONS:**

**CONFORMITY WITH STATUTE**

Terms of this endorsement which are in conflict with the statute of the state wherein this endorsement is issued are hereby amended to conform to such statutes.

VI. For the purposes of the coverage provided by this endorsement, the following optional extended reporting provision is added to the policy:

**OPTIONAL EXTENDED REPORTING ENDORSEMENT**

The coverage under the Employee Benefits Liability Insurance Endorsement may end because one of us chooses to cancel it or not renew it. If this is not the result of non-payment of the premium you have the right to buy a reporting endorsement. It extends the time to report covered claims. The claim must first be made against an insured and reported to us within 3 years after the Employee Benefits Liability Insurance Endorsement ends and while the reporting endorsement is in effect. To obtain this reporting endorsement you must request it in writing and pay the additional premium within 60 days after this endorsement ends. If we do not receive written notice and payment within this period, you may not exercise this right at a later date.

This additional premium will not exceed 200% of the annual premium for the Employee Benefits Liability Insurance Endorsement. Once you pay the premium we cannot cancel the endorsement.

The optional Extended Reporting Endorsement does not reinstate or increase the Limits of Liability applicable to any claim to which the Employee Benefits Liability Insurance Endorsement applies.

VII. Solely as respects coverage provided by this endorsement, Definitions 5., 11., and 39., in **SECTION VI - DEFINITIONS** are deleted in their entirety and replaced by the following:

5. **Claim** means any demand or suit made by an employee or an employees's dependents or beneficiaries, for damages as the result of a wrongful act.

11. **Employee** means a person actively employed, formerly employed, on leave of absence or disabled, or retired. **Employee** includes a leased worker. **Employee** does not include a temporary worker.

39. **Suit** means a civil proceeding in which damages because of a wrongful act to which this insurance applies are alleged. **Suit** includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

VIII. For the purposes of the coverage provided by this endorsement, the following definitions are added to **SECTION VI - DEFINITIONS**

**Administration** means:

1. Giving counsel to employees with respect to the employee benefits program;

2. Interpreting the employee benefits program;

3. Handling of records in connection with the employee benefits program;

4. Effecting, continuing or terminating any employees participation in any benefit included in the employee benefits program.

Breach of fiduciary duty means the violation of any of the responsibilities, obligations of duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto with respect to any plan covered by this endorsement.

Employee benefits program means group life insurance, group accident or health insurance, profit sharing plans, pension plans, stock subscription plans, workmen's compensation, unemployment insurance, social security benefits, disability benefits, tuition assistance plans, leave of absence programs, including military, family and civil leave, and any other similar employee benefits instituted after the effective date of this endorsement provided we are notified within thirty (30) days after the institution of such benefits.

Insured means:

1. The Named Insured;

2. If the Named Insured is a partnership or joint venture, any partner or member thereof, but only with respect to their liability as such;

3. Any executive officer, director or stockholder of the Named Insured while acting within the scope of their duties as such;

4. Any employee provided such employee is authorized to act in the administration of the Named Insured's employee benefits program.

Wrongful Act means any actual or alleged negligent act, error or omission in the administration of the employee benefits program.

All other terms, conditions and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

This endorsement, effective 12:01 AM, February 1, 2016

Forms a part of Policy No: EG      15411971

Issued to:  SHIELD PACKAGING CO., INC

By:  AIG SPECIALTY INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### COVERAGE D-2 AMENDATORY ENDORSEMENT - COVERAGE APPLICABLE TO IDENTIFIED LOCATION(S) ONLY

This endorsement modifies insurance provided under the following:

#### COMMERCIAL GENERAL LIABILITY AND POLLUTION LEGAL LIABILITY COVERAGE FORM

It is hereby agreed that **SECTION VI - DEFINITIONS, Paragraph 19. Insured property,** subparagraph **Applicable to Coverage D-2** is deleted in its entirety and replaced with the following:

**Applicable to Coverage D-2**

Solely the locations Identified below:
99 UNIVERSITY ROAD, CANTON, MA 02021

All other terms, conditions and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

## ENDORSEMENT NO. 7

**This endorsement, effective 12:01 AM, February 1, 2016**

**Forms a part of Policy No: EG      15411971**

**Issued to: SHIELD PACKAGING CO., INC**

**By: AIG SPECIALTY INSURANCE COMPANY**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### PRODUCT RECALL EXPENSE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY AND
### POLLUTION LEGAL LIABILITY COVERAGE FORM

It is hereby agreed as follows:

Subject to the **DEDUCTIBLE, PARTICIPATION PERCENTAGE, LIMIT OF INSURANCE FOR PRODUCT RECALL EXPENSE, DEFINITIONS, EXCLUSIONS** and **CONDITIONS** described below in Sections I. through IV. of this endorsement, respectively, the following is added to the Policy.

### PRODUCT RECALL EXPENSE

I.   The following is added to **SECTION I - COVERAGES** as **PRODUCT RECALL INSURING AGREEMENT.**

   **1. PRODUCT RECALL INSURING AGREEMENT**

   We will reimburse you for product recall expense arising out of a covered incident. The amount we will pay is limited as described in the Section IV. **LIMIT OF INSURANCE FOR PRODUCT RECALL EXPENSE** of this endorsement.

   **2. PRODUCT RECALL EXCLUSIONS**

   This Product Recall Coverage Part does not apply to product recall expense arising from or in connection with:

   A. Any legal liability of any nature;

   B. Expenses you incur for the recall, recovery of possession or control, or destruction of your product because your product is similar to or your product has the same trade or brand name but is of a different batch than the product which has been, or is being, recalled or which has been determined to be likely to cause a covered incident under this Coverage;

   C. A decrease in product sales due to loss of customer confidence or approval, or any costs incurred to increase product sales and regain customer confidence or approval;

   D. A covered incident in which you expected or intended injury or damage, regardless of whether you intended the specific injury or damage sustained;

   E. A defect in your product which, prior to the inception date of this policy, you reasonably expected could give rise to a covered incident;

94332 (4/07)
CI3049

F. The cost or expense to repair, decontaminate or otherwise treat the recalled product so as to render it marketable, except to the extent such cost or expense reduces product recall expense;

G. The natural deterioration, decomposition or transformation of the chemical structure of your product except as a result of error or omission in the manufacture of the product;

H. Your dishonest, willful, wanton, fraudulent, criminal or malicious act, error or omission;

I. Fines, penalties, punitive, exemplary, or multiplied damages;

J. Any matter alleged as covered under this endorsement which we have accepted as covered or which has been held to be covered under any other Coverage Part of this Policy.

II. **SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE is amended by the addition of the following:**

**PRODUCT RECALL DEDUCTIBLE**

Regardless of any other deductible or self-insured retention stated within the policy or Declarations, you shall be responsible for the deductible amount of $50,000 for all product recall expense arising out of each covered incident .

We shall only reimburse you for product recall expense for any one covered incident if the product recall expense exceeds the deductible amount, but only up to the LIMIT OF INSURANCE FOR PRODUCT RECALL EXPENSE per Section IV. of this endorsement.

All product recall expense resulting from the same, related or continuous covered incident shall be subject to one deductible.

**PARTICIPATION PERCENTAGE**

You shall participate in the payment of product recall expense which exceeds the deductible amount to the extent of a participation percentage of 20%, but no coverage will apply under this endorsement if you obtain insurance for all or a portion of the participation percentage.

**LIMIT OF INSURANCE FOR PRODUCT RECALL EXPENSE**

The Limit of Insurance applicable to this endorsement is part of, and included in, the Products - Completed Operations Aggregate Limit stated in Item 3. LIMITS OF INSURANCE of the Declarations.

The most we will pay for the sum of all product recall expense covered under this endorsement is 80% of $250,000.

**SECTION VI - DEFINITIONS is amended to include the following definitions:**

A. **Covered Incident** means the recall, recovery of possession or control, or destruction of your product in the possession or control of a distributor, purchaser, or user of such product, resulting from a determination by you or a governmental entity that the use or consumption of your product has resulted or could reasonably be expected to result in bodily injury, property damage or environmental damage. That determination must be a result of the discovery of any of the following during the policy period:

1. Accidental omission of a substance in the manufacture of your product;

2. Accidental introduction or substitution of a substance in the manufacture of your product;

3. Error in the manufacture, blending, mixing, compounding, labeling or storage of your product; or

4. Tampering, sabotage, intentional damage, or poisoning of your product by your employees or by a third party.

B. **Participation Percentage** means the percentage of product recall expense you must bear, in excess of the Deductible, as described in Section II. DEDUCTIBLE of this endorsement.

C. **Product Recall Expense** means the reasonable and necessary costs you incur exclusively for the recall, recovery, or destruction of your product which was manufactured, sold, handled or distributed no earlier than twelve (12) months prior to the beginning of the policy period. These costs are limited to the following:

1. Communications to notify others of a **covered incident**, including but not limited to, radio and television announcements and printed advertisements;

2. The cost of shipping your product from any distributor, purchaser or user to the place or places you designate;

3. The actual cost of disposal of your product, but only to the extent that specific methods of destruction other than those usually employed for trash discarding or disposal, are required to avoid bodily injury, property damage or environmental damage as a result of such destruction;

4. The extra expense to rent additional warehouse or storage space to receive your product; and

5. (a) The cost to hire additional persons other than your regular employees;

(b) Remuneration paid to your regular employees, other than salaried employees, at your usual rates of salary or wages for necessary straight time or overtime; and

(c) Expenses incurred by your employees, including transportation and accommodations.

**Product Recall Expense** shall be reduced by the salvage value of your product after its recall, recovery or destruction.

IV. **SECTION IV - CONDITIONS** is amended by the addition of the following:

**YOUR DUTIES IN THE EVENT OF A COVERED INCIDENT**

A. **Notice**

If you reasonably believe a **covered incident** may result in product recall expense, whether or not such incident appears to involve coverage provided by this endorsement, written notice shall be given by or for you to us at the address set forth in **SECTION IV - CONDITIONS**, Paragraph 2., Applicable to Coverages A, B, C and E, subparagraph e., as soon as practicable containing particulars sufficient to identify you and your product and information with respect to the time, place, circumstances and estimated product recall expense. You shall promptly take all reasonable steps to minimize any product recall expense involved, including the immediate cessation of the sale or distribution of your product which may result in product recall expense, until such time as you determine that your product will not result in product recall expense.

B. **Cooperation**

94332 (4/07)
CI3049

You shall cooperate with us and, at our request, assist us in enforcing any right of contribution or indemnity against any person or organization other than a named insured under this policy who may be liable to you because of product recall expense incurred.

**C. Proof**

Within sixty (60) days after you have incurred product recall expense, unless such time is extended in writing by us, you shall submit to us a sworn and signed proof of loss specifying the product recall expense for which you seek reimbursement under this endorsement. Your proof of loss shall be supported by bills, invoices and such other documentary support as we may reasonably request.

All other terms, conditions, and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

# ENDORSEMENT NO. 8

This endorsement, effective 12:01 AM, February 1, 2016

Forms a part of Policy No.: EG    15411971

Issued to:  SHIELD PACKAGING CO., INC

By:  AIG SPECIALTY INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### LIMITED ADVICE OF CANCELLATION TO ENTITIES OTHER THAN
### THE NAMED INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY AND
### POLLUTION LEGAL LIABILITY COVERAGE FORM

It is hereby agreed that the following is added to SECTION IV - CONDITIONS:

In the event that we cancel this Policy for any reason other than non-payment of premium, and

1. the cancellation effective date is prior to this Policy's expiration date;

2. you are under an existing contractual obligation to notify a certificate holder when this Policy is canceled (hereinafter, the "Certificate Holder(s)") and have provided to us, either directly or through your broker of record, the email address of a contact at each such entity; and

3. we received this information after you received notice of cancellation of this Policy and prior to this Policy's cancellation effective date, via an electronic spreadsheet that is acceptable to us,

we will provide advice of cancellation (the "Advice") via e-mail to each such Certificate Holders within 30 days after you provide such information to us.

Proof of our emailing the Advice, using the information provided by you, will serve as proof that we have fully satisfied our obligations under this Endorsement.

This Endorsement does not affect, in any way, coverage provided under this Policy or the cancellation of this Policy or the effective date thereof, nor shall this Endorsement invest any rights in any entity not insured under this Policy.

All other terms, conditions, and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

109821(9/11)
CI5040

PAGE 1 OF 1

This endorsement, effective 12:01 AM:  February 1, 2016

Forms a part of policy no.: EG     15411971

Issued to:  SHIELD PACKAGING CO., INC

By:  AIG SPECIALTY INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### CONDITION OF PAYMENT ENDORSEMENT

We shall not be deemed to provide cover and we shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose us, our parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

All other terms, conditions, and exclusions shall remain the same.

Authorized Representative
or countersignature (in states where applicable)

This endorsement, effective 12:01 AM, February 1, 2016

Forms a part of Policy No: EG     15411971

Issued to:  SHIELD PACKAGING CO., INC

By:  AIG SPECIALTY INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**TERRORISM EXCLUSION - ALL TERRORISM (CERTIFIED AND NON-CERTIFIED ACTS OF TERRORISM) EXCLUSION ENDORSEMENT**

This Policy is amended by the addition of the following Exclusion:

The Company has no obligation to make any payment or to provide or to pay for a defense under this Policy due to or arising directly or indirectly as a result of or in connection with Terrorism.

Terrorism means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

The defined term Terrorism shall specifically include, but is not limited to, the following definition of a **certified act of terrorism** as follows:

**Certified act of terrorism** means any act as defined in the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2015, or as further amended (hereinafter, "TRIA") that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security and the Attorney General of the United States:

A.  to be an act of terrorism;

B.  to be a violent act or an act that is dangerous to:

1.  human life;

2.  property; or

3.  infrastructure;

C.  to have resulted in damage within the United States, or outside of the United States in the case of:

1.  an air carrier or vessel [described in TRIA]; or

2.  the premises of a United States mission; and

D.  to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms, conditions, and exclusions shall remain the same.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

FOR USE TO EXCLUDE ALL TERRORISM REJECTION OF CERTIFIED ACTS OF TERRORISM.



# STAR
## INSURANCE COMPANY

26255 American Drive
Southfield, MI 48034-6112

Workers Compensation and Employers Liability
Insurance Policy

| Policy Number | Policy Period | |
|---|---|---|
| | From | To |
| WC 0391568 | 01/04/2016 12:01 A.M. Standard Time at the mailing address of the Insured as stated herein | 01/04/2017 |
| Renewal Of | Transaction | |
| WC 0391568 | Policy Declaration | |

| 1. Named Insured and Mailing Address | Agent |
|---|---|
| SHIELD PACKAGING CO. INC.<br>PO BOX 190<br>CANTON MA 02021-0190 | TPA INSURANCE AGENCY, INC.<br>10 NEW ENGLAND BUS CTR, #303<br>ANDOVER MA 01810 |

| UNEMPLOYMENT ID # | CARRIER #<br>24562 | FEIN #<br>042218665 | Risk ID #<br>1390892 | Entity of Insured<br>CORPORATION |
|---|---|---|---|---|

Other Workplaces Not Shown Above: SEE ATTACHED SCHEDULE

2. The Policy Period is from 01/04/2016 to 01/04/2017 12:01 a.m. Standard Time at the Insured's mailing address.

3. A. Workers Compensation Insurance: Part ONE of the policy applies to the Workers Compensation Law of the states listed here: MA, NH

B. Employers Liability Insurance: Part TWO of the policy applies to work in each state listed in Item 3A.
The limits of our liability under Part TWO are:

| Bodily Injury by Accident | $ | 1,000,000 | each accident |
|---|---|---|---|
| Bodily Injury by Disease | $ | 1,000,000 | policy limit |
| Bodily Injury by Disease | $ | 1,000,000 | each employee |

C. Other States Insurance: Part THREE of the policy applies to the states, if any, listed here: All states except North Dakota, Ohio, Washington, Wyoming, and states designated in item 3.A. above.

D. This policy includes these endorsements and schedules: See attached schedule

4. The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates, and Rating Plans. All information required below is subject to verification and change by audit.

**Assessments and Taxes**     SEE EXTENSION OF INFORMATION PAGE
MA    $4,821

If the premium is paid on an installment basis, a $5.00 per payment charge applies.

| | | |
|---|---|---|
| Total Estimated Annual Premium | $ | 90,485 |
| Expense Constant | $ | 338 |
| Premium Discount | $ - | 6,899 |
| Deposit Premium | $ | 95,306 |

Minimum Premium $ 491

Premium Adjustment Period:   [X] Annual;   ☐ Semiannual;   ☐ Quarterly;   ☐ Monthly

Issued Date: 12/28/2015

Authorized Representative

Issuing Office

WC 00 00 01 (Ed. 12/04)

INSURED COPY



| Policy Number: | WC 0391568 | |
|---|---|---|
| Named Insured: | SHIELD PACKAGING CO. INC. | |
| Agent: | TPA INSURANCE AGENCY, INC. | 0010279 |

# EXTENSION OF INFORMATION PAGE
## CLASSIFICATION OF OPERATIONS

| Code No. | Classification Description | Premium Basis Total Est. Annual Remuneration | Rate Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| **MASSACHUSETTS** | | | | |
| | UNIT: 00001  ADDRESS: 99 UNIVERSITY ROAD | | | |
| | PERIOD: 01/04/2016 TO 01/04/2017 | | | |
| 2156 | BOTTLING-NOT CARBONATED LIQUIDS OR SPIRITOUS LIQUORS & ROUTE SUPERVISORS, DRIVERS | $ 1,125,806 | 6.880000 | $ 77,455.00 |
| 8742 | SALESPERSONS, COLLECTORS OR MESSENGERS-OUTSIDE | $ * IF ANY * | 0.160000 | $ 0.00 |
| 8810 | CLERICAL OFFICE EMPLOYEES NOC | $ 1,125,000 | 0.080000 | $ 900.00 |
| | **MANUAL PREMIUM** | | | $ 78,355.00 |
| 9037 | RATE DEVIATION - CREDIT | $ | 1.000000 | $ 0.00 |
| 9812 | INCREASED LIMITS OF EMPLOYERS LIABILITY | $ 78,355 | 0.020000 | $ 1,567.00 |
| 9898 | EXPERIENCE MODIFICATION | $ 79,922 | 1.070000 | $ 5,595.00 |
| 0063 | PREMIUM DISCOUNT | $ 85,517 | 0.080000 | $ -6,841.00 |
| 0900 | EXPENSE CONSTANT | $ | | $ 338.00 |
| 0277 | ALL RISK ADJUSTMENT PROGRAM | $ 85,517 | 0.120000 | $ 10,262.00 |
| 9740 | TERRORISM ACT SURCHARGE | $ 2,250,806 | 0.030000 | $ 675.00 |
| MA IND | MASSACHUSETTS INDUSTRIAL ACCIDENT PRIVATE TRUST/SPECIAL FUND | $ 83,840 | 0.057500 | $ 4,821.00 |
| | **STATE TOTAL** | | | $ 94,772.00 |



Workers Compensation and Employers Liability
Insurance Policy

| Policy Number: | WC 0391568 | |
|---|---|---|
| Named Insured: | SHIELD PACKAGING CO. INC. | |
| Agent: | TPA INSURANCE AGENCY, INC. | 0010279 |

# EXTENSION OF INFORMATION PAGE
## CLASSIFICATION OF OPERATIONS

| Code No. | Classification Description | | Premium Basis Total Est. Annual Remuneration | Rate Per $100 of Remuneration | | Estimated Annual Premium |
|---|---|---|---|---|---|---|
| **NEW HAMPSHIRE** | | | | | | |
| UNIT: 00002  ADDRESS: 4 TIMBER LANE | | | | | | |
| PERIOD: 01/04/2016  TO  01/04/2017 | | | | | | |
| 8742 | SALESPERSONS, COLLECTORS OR MESSENGERS-OUTSIDE | $ | 127,531 | 0.410000 | $ | 523.00 |
| | MANUAL PREMIUM | | | | $ | 523.00 |
| 9812 | INCREASED LIMITS OF EMPLOYERS LIABILITY | $ | 523 | 0.011000 | $ | 6.00 |
| 9898 | EXPERIENCE MODIFICATION | $ | 529 | 1.070000 | $ | 37.00 |
| 0063 | PREMIUM DISCOUNT | $ | 566 | 0.103000 | $ | -58.00 |
| 9740 | TERRORISM | $ | 127,531 | 0.010000 | $ | 13.00 |
| 9741 | CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) | $ | 127,531 | 0.010000 | $ | 13.00 |
| | STATE TOTAL | | | | $ | 534.00 |
| | POLICY TOTAL | | | | $ | 95,306.00 |



Workers Compensation and Employers Liability
Insurance Policy

| Policy Number: | WC 0391568 | |
| Named Insured: | SHIELD PACKAGING CO. INC. | |
| Agent: | TPA INSURANCE AGENCY, INC. | 0010279 |

# ADDITIONAL LOCATION SCHEDULE

Loc
Nbr      Name & Address

00001
SHIELD PACKAGING CO. INC.
99 UNIVERSITY ROAD
CANTON MA 02021-0000

00003
SHIELD PACKAGING CO. INC.
50 OXFORD AVENUE
DUDLEY MA 01571-0000

Loc
Nbr      Name & Address

00002
SHIELD PACKAGING CO. INC.
4 TIMBER LANE
PELHAM NH 03075-0000

00004
SHIELD PACKAGING CO., INC
15-21 UNIVERSITY ROAD
CANTON MA 02021-0000



**STAR**
**INSURANCE**
**COMPANY**

Workers Compensation and Employers Liability
Insurance Policy

| Policy Number: | WC 0391568 | |
| Named Insured: | SHIELD PACKAGING CO. INC. | |
| Agent: | TPA INSURANCE AGENCY, INC. | 0010279 |

| State # | Number | Ed. Date | Description |
|---------|--------|----------|-------------|
| US | WC000000C | 1/15 | WC & EL POLICY |
| US | WC990608B | 3/12 | WITNESS CLAUSE/SIGNATURE PAGE |
| MA | WC000313 | 4/84 | WAIVER OF OUR RIGHT TO RECOVER |
| MA | WC000406A | 7/95 | PREMIUM DISCOUNT ENDORSEMENT |
| MA | WC000421D | 1/15 | CATASTROPHE PREMIUM ENDT |
| MA | WC000422B | 1/15 | TERRORISM RISK INS ACT ENDT |
| MA | WC200302A | 9/08 | MA-ASSESSMENT CHARGE |
| MA | WC200303D | 8/10 | MA-NOTICE TO POLICYHOLDER ENDT |
| MA | WC200401 | 11/90 | MA-PENDING PREMIUM CHANGE ENDT |
| MA | WC200405 | 6/01 | MA PREMIUM DUE DATE ENDT |
| MA | WC200601A | 7/08 | MA-CANCELLATION ENDORSEMENT |
| NH | WC000406 | 8/84 | PREMIUM DISCOUNT ENDORSEMENT |
| NH | WC000419 | 1/01 | PREMIUM DUE DATE ENDORSEMENT |
| NH | WC000421D | 1/15 | CATASTROPHE PREMIUM ENDT |
| NH | WC000422B | 1/15 | TERRORISM RISK INS ACT ENDT |
| NH | WC280404 | 1/08 | NH PENDING RATE CHANGE |
| NH | WC280604 | 4/92 | NH-AMENDATORY ENDORSEMENT |

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows:

### GENERAL SECTION

**A. The Policy**

This policy includes as its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B. Who Is Insured**

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C. Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D. State**

State means any state of the United States of America, and the District of Columbia.

**E. Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

### PART ONE
### WORKERS COMPENSATION INSURANCE

**A. How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B. We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C. We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D. We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

**E. Other Insurance**

We will not pay more than our share of benefits and costs covered by this insurance and other

insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

F. **Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

G. **Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

H. **Statutory Provisions**

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the

workers compensation law that apply to:

a. benefits payable by this insurance;

b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO
## EMPLOYERS LIABILITY INSURANCE

A. **How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

B. **We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against

such third party as a result of injury to your employee;

2. For care and loss of services; and

3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

C. **Exclusions**

This insurance does not cover:

1. Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 U.S.C. Sections 901 et seq.), the Nonappropriated Fund Instrumentalities Act (5 U.S.C. Sections 8171 et seq.), the Outer Continental Shelf Lands Act (43 U.S.C. Sections 1331 et seq.), the Defense Base Act (42 U.S.C. Sections 1651–1654), the Federal Mine Safety and Health Act (30 U.S.C. Sections 801 et seq. and 901–944), any other federal workers or

workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 U.S.C. Sections 51 et seq.), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. Bodily injury to a master or member of the crew of any vessel, and does not cover punitive damages related to your duty or obligation to provide transportation, wages, maintenance, and cure under any applicable maritime law;

11. Fines or penalties imposed for violation of federal or state law; and

12. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 U.S.C. Sections 1801 et seq.) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

D. **We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

E. **We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

**F. Other Insurance**

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

**G. Limits of Liability**

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident—each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

   A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease—policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease—each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

   Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

**H. Recovery From Others**

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

**I. Actions Against Us**

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

**PART THREE
OTHER STATES INSURANCE**

**A. How This Insurance Applies**

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

**B. Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

**PART FOUR
YOUR DUTIES IF INJURY OCCURS**

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal

papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE
## PREMIUM

### A. Our Manuals

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

### B. Classifications

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

### C. Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

### D. Premium Payments

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

### E. Final Premium

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short-rate cancelation table and procedure. Final premium will not be less than the minimum premium.

### F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

### G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX
## CONDITIONS

A. **Inspection**

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

B. **Long Term Policy**

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

C. **Transfer of Your Rights and Duties**

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

D. **Cancelation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancelation notice.

4. Any of these provisions that conflict with a law that controls the cancelation of the insurance in this policy is changed by this statement to comply with the law.

E. **Sole Representative**

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancelation.

## WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)

This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

Schedule

BLANKET

MA

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

| | | |
|---|---|---|
| Endorsement Effective | Policy No. | Endorsement No. |
| Insured | | Premium $ |
| Insurance Company | | Countersigned by _____ |

Copyright 1983 National Council on Compensation Insurance.

Hart Forms & Services
Reorder No. 14-4888

## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Item 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

### Schedule

| | | | Estimated Eligible Premium | | |
|---|---|---|---|---|---|
| 1. State | First | Next | Next | | Balance |
| NEW HAMPSHIRE | $5,000 | $95,000 | $400,000 | Over | $500,000 |
| | 0.0% | 10.9% | 12.6% | | 14.4% |

2. Average percentage discount: _____ %

3. Other policies:

4. If there are no entries in Items 1, 2 and 3 of the Schedule see the Premium Discount Endorsement attached to your policy number:

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
   (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective                    Policy No.                    Endorsement No.
Insured                                                                Premium $

Insurance Company                                    Countersigned by _____

Copyright 1983 National Council on Compensation Insurance.

Hart Forms & Services
Reorder No. 14-4908

## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

### Schedule

1. State                                 Estimated Eligible Premium

| | First $10,000 | Next $190,000 | Next $1,550,000 | Balance |
|---|---|---|---|---|
| MASSACHUSETTS | 0.0% | 9.1% | 11.3% | 12.3% |

2. Average percentage discount:       %

3. Other policies:

4. If there are no entries in Items 1, 2 and 3 of the Schedule, see the Premium Discount Endorsement attached to your policy number:

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective                  Policy No.               Endorsement No.

Insured                                                 Premium $

Insurance Company                       Countersigned by —————————

WC 00 04 06 A
(Ed. 7-95)           Copyright 1995 National Council on Compensation Insurance, Inc.      Uniform Forms™

## PREMIUM DUE DATE ENDORSEMENT

This endorsement is used to amend:

Section D. of Part Five of the policy is replaced by this provision.

### PART FIVE
### PREMIUM

D. Premium is amended to read:

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid. The due date for audit and retrospective premiums is the date of the billing.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

| | | |
|---|---|---|
| Endorsement Effective | Policy No. | Endorsement No. |
| Insured | | Premium $ |
| Insurance Company | | Countersigned by_____ |

Copyright 2000 National Council on Compensation Insurance, Inc.

Han Forms & Services
Reorder No. 14-A187

## CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of a Catastrophe (other than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism). This premium charge does not provide funding for Certified Acts of Terrorism contemplated under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 B), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- Catastrophe (other than Certified Acts of Terrorism): Any single event, resulting from an Earthquake, Noncertified Act of Terrorism, or Catastrophic Industrial Accident, which results in aggregate workers compensation losses in excess of $50 million.

- Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity.

- Noncertified Act of Terrorism: An event that is not certified as an Act of Terrorism by the Secretary of Treasury pursuant to the Terrorism Risk Insurance Act of 2002 (as amended) but that meets all of the following criteria:

  a.  It is an act that is violent or dangerous to human life, property, or infrastructure;

  b.  The act results in damage within the United States, or outside of the United States in the case of the premises of United States missions or air carriers or vessels as those terms are defined in the Terrorism Risk Insurance Act of 2002 (as amended); and

  c.  It is an act that has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

- Catastrophic Industrial Accident: A chemical release, large explosion, or small blast that is localized in nature and affects workers in a small perimeter the size of a building.

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism) is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate | Premium |
|---|---|---|
| NEW HAMPSHIRE | 0.010 | $    13.00 |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective                    Policy No.                    Endorsement No.
Insured                                                                Premium:

Insurance Company                                    Countersigned by

d.  $160,000,000, with respect to such Insured Losses occurring in calendar year 2018, the United States Government would pay 82% of our Insured Losses that exceed our Insurer Deductible.

e.  $180,000,000, with respect to such Insured Losses occurring in calendar year 2019, the United States Government would pay 81% of our Insured Losses that exceed our Insurer Deductible.

f.  $200,000,000, with respect to such Insured Losses occurring in calendar year 2020, the United States Government would pay 80% of our Insured Losses that exceed our Insurer Deductible.

2.  Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.

3.  The premium charge for the coverage your policy provides for Insured Losses is included in the amount shown in Item 4 of the Information Page or in the Schedule below.

## Schedule

| State | Rate | Premium |
|---|---|---|
| MASSACHUSETTS | 0.030 | $  675.00 |
| NEW HAMPSHIRE | 0.010 | $   13.00 |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective        Policy No.        Endorsement No.
Insured                                        Premium

Insurance Company                    Countersigned by

## MASSACHUSETTS—ASSESSMENT CHARGE

Massachusetts General Laws, Chapter 152, Section 65, as amended by Chapter 572 of the Acts of 1985, establishes a workers compensation special fund and a workers compensation trust fund.

On behalf of the Department of Industrial Accidents (DIA), the insurance company providing workers compensation coverage is required to bill and collect an assessment charge covering the special and trust funds from insured employers and remit the amounts collected to the State Treasury.

The assessment charge, which is determined by applying a rate (subject to annual change) to the DIA's standard premium, as defined and outlined in 452 CMR 7.00, developed under your policy, is shown as a separate item on the information page of the policy. The rate may be different for private employers and for the Commonwealth and its political subdivisions.

The income derived from the assessment charge will be used to fund the operating expenses of the DIA and to fund certain employee benefits as described in Chapter 152.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective                    Policy No.                          Endorsement No.
Insured                                                                      Premium $

Insurance Company                                   Countersigned by

## MASSACHUSETTS NOTICE TO POLICYHOLDER ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Massachusetts is shown in Item 3.A. of the Information Page.

1.   Rates and Premium

The policy contains rates and classifications that apply to your type of business. If you have any questions regarding the rates or classifications, please contact your agent or us.

You may obtain pertinent rating information by submitting a written request to the Workers' Compensation Rating and Inspection Bureau of Massachusetts at the address shown in this endorsement or to us at our company address shown on this endorsement. We may require you to pay a reasonable charge for furnishing the information.

You may also submit a written request for a review of the method by which your classification, rates, premiums or audit results were determined. If we fail to grant or reject your request within thirty days after it is made or if you are not satisfied by the results of our review, you may submit a written request for review to the Workers' Compensation Rating and Inspection Bureau of Massachusetts ("WCRIBMA") at the address shown in this endorsement. If the WCRIBMA fails to grant or reject your request within thirty days after it is made or if you are not satisfied with the results of the WCRIBMA review, you may appeal to the Commissioner of Insurance at the address shown in this endorsement.

2.   Reserves or Settlements

You may request a loss run, which contains reserve and settlement information for claims that relate to the premium for this policy. Such a request must be in writing and should be sent to our address shown on this endorsement. We will provide you with that information within thirty (30) days of receipt of your request, and at reasonable intervals thereafter.

If you have any questions or believe that we set unreasonable reserves or made unreasonable settlements that affected your premiums or losses, you may make a written request through your agent or directly to us for a meeting with our company representative. If you are not satisfied with the results of the meeting, you may make a written appeal to the Insurance Commissioner at the address shown on the endorsement.

3.   Named Insured

You are responsible for immediately reporting all changes in name or legal status to us in writing at the company address shown in this Endorsement.

If you want to add a named insured or replace the named insured with another legal entity on any policy issued through the Massachusetts Assigned Risk Pool you must submit a new Assigned Risk Pool Application, including a Confidential Request for Information Form (ERM), to the Workers' Compensation Rating and Inspection Bureau of Massachusetts at the address shown in this Endorsement.

4.   Insured's Mailing Address

Notices relating to this Policy will be mailed or delivered to your mailing address. Your mailing address is that which is shown in Item 1 of the Information Page or in a change of address Endorsement to the Policy. You are responsible for notifying us in writing at the company address shown in this Endorsement about any change to your mailing address.

## Addresses

The Workers' Compensation Rating and
Inspection Bureau of Massachusetts
Attention: Customer Service Department
101 Arch Street, 5th Floor
Boston, MA 02210
www.wcribma.org

STAR INSURANCE COMPANY
PO BOX 4213
SARASOTA          FL          34230-4213

Commissioner of Insurance
Division of Insurance
Department of Banking and Insurance
1000 Washington Street, 8th Floor
Boston, MA 02118-2218

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective                    Policy No.                    Endorsement No.
Insured                                                                Premium $

Insurance Company                                   Countersigned by

## MASSACHUSETTS PENDING PREMIUM CHANGE ENDORSEMENT

A filing is being considered by the Massachusetts Division of Insurance which may result in premiums different from those shown on the policy. If it does, we will issue an endorsement to show the new premiums and their effective date.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective                     Policy No.                          Endorsement No.

Insured                                                                              Premium $

Insurance Company                                        Countersigned by _____

Copyright 1991 National Council on Compensation Insurance.

Hart Forms & Services
Reorder No. 14-5103

## MASSACHUSETTS PREMIUM DUE DATE ENDORSEMENT

Section D of Part Five of the Policy is replaced by this provision:

**PART FIVE
PREMIUM**

D. Premium Payments is amended to read:

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid. The audit and retrospective premiums shall be paid by the due date indicated on the billing statement.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective                     Policy No.                     Endorsement No.

Insured                                                                   Premium $

Insurance Company                          Countersigned by ─────────────

Copyright 2001 National Council on Compensation Insurance, Inc.

## MASSACHUSETTS CANCELLATION ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Massachusetts is shown in Item 3.A. of the Information Page.

The Cancellation Condition of the policy is replaced by the following:

**Cancellation**

1.  You may cancel this policy by mailing or delivering to us advance written notice requesting cancellation. Such cancellation shall not be effective until ten days after written notice is given by us to The Workers' Compensation Rating and Inspection Bureau of Massachusetts (Bureau), or until notice has been received by the Bureau that you have secured insurance from another insurance company, whichever occurs first. Our notice to the Bureau may be given by electronic transmission.

2.  We may cancel this policy only if based on one or more of the following reasons: (i) nonpayment of premium; (ii) fraud or material misrepresentation affecting your policy; or (iii) a substantial increase in the hazard insured against. Such cancellation shall not be effective until ten days after written notice is given by us to you and The Workers' Compensation Rating and Inspection Bureau of Massachusetts (Bureau), or until notice has been received by the Bureau that you have secured insurance from another insurance company, whichever occurs first. Our notice to the Bureau may be given by electronic transmission.

3.  We will mail or deliver the notice of cancellation to you at your last address, which shall be the mailing address shown in Item 1 of the Information Page or the change of mailing address shown in an Endorsement to the Policy. Pursuant to M.G.L. Chapter 175, Section 187C, a written notice of cancellation shall be deemed effective when mailed by us if we obtain a certificate of mailing receipt from the United States Postal Service showing your name and address as stated in the policy.

4.  Any of these provisions that conflict with the law that controls the cancellation of this insurance policy is changed by this statement to comply with the law.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

| | | |
|---|---|---|
| Endorsement Effective | Policy No. | Endorsement No. |
| Insured | | Premium $ |
| | | |
| Insurance Company | Countersigned by _____ | |

© Copyright 2008 National Council on Compensation Insurance, Inc. All Rights Reserved.

## NEW HAMPSHIRE PENDING RATE CHANGE ENDORSEMENT

A rate change filing is being considered by the proper regulatory authority. The filing may result in rates different from the rates shown on the policy. If the approval of the pending rate change filing results in changes to the rates on this policy, we will issue an endorsement within 60 days of the effective date of rates approved by the regulatory authority to show the new rates and their effective date.

If New Hampshire is shown in Item 3.A. of the Information Page, this endorsement applies to that state.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective                          Policy No.                     Endorsement No.
Insured                                                                       Premium $

Insurance Company                                          Countersigned by ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

WC 28 04 04
(Ed. 1-08)

© Copyright 2007 National Council on Compensation Insurance, Inc. All Rights Reserved.

## NEW HAMPSHIRE AMENDATORY ENDORSEMENT

This endorsement applies only to the New Hampshire coverage provided by the policy because New Hampshire is shown in Item 3.A. of the Information Page.

For New Hampshire coverage, the Cancelation condition of the policy is amended and replaced by:

1. You may cancel this policy. You must mail or deliver advance written notice to us.

2. We may cancel this policy. We will file a written termination notice with the Commissioner of the Department of Labor and will send a copy to you.

3. In case of nonpayment of premium, the cancelation will take effect 30 days after the termination notice is filed.

4. In case of cancelation for reasons other than nonpayment of premium, cancelation will take effect 45 days after the notice of termination is filed.

5. If you have obtained coverage from another insurance carrier or have qualified as a self-insurer, cancelation is effective on the date you obtained the coverage or qualified as a self-insurer.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective      Policy No.      Endorsement No.

Insured      Premium $

Insurance Company      Countersigned by _____

WC 28 06 04
(Ed. 4-92)

Copyright 1992 National Council on Compensation Insurance.

Hart Forms & Services
Reorder No. 14-7419

*In Witness Whereof, we have caused this policy to be executed and attested. If required by state law, this policy shall not be valid unless countersigned by our authorized representative* (void in Arizona and Virginia).

Secretary of Star Insurance Company      President of Star Insurance Company



AIG Property Casualty
175 Water Street
New York, NY 10038
www.aig.com

Lorraine McKay
Senior Claims Analyst
Complex Casualty
T: (201) 631-4167
Lorraine.mckay@aig.com

*Please direct all regular and certified mail to*

AIG Claims, Inc.
Environmental & Mass Torts
Claims
PO Box 26027
Shawnee Mission, KS 66225

**VIA E-MAIL:** sgarzi@shieldpackaging.com

December 28, 2017

Lou Sgarzi
Shield Packaging Company, Inc.
99 University Road
P.O. Box 190
Canton, MA 02021

| | |
|---|---|
| **Insured:** | Shield Packaging Company, Inc. |
| **Claimant(s):** | Luis Gomez |
| **Policy #:** | EG 15411971 (02/01/2016-02/01/2017) |
| **Claim #:** | 5046784342US |

## RESERVATION OF RIGHTS

Dear Mr. Sgarzi:

AIG Claims, Inc. ("AIG Claims") is the authorized claims administrator for AIG Specialty Insurance Company ("ASIC"), which issued Commercial General Liability and Pollution Legal Liability policy numbered EG 15411971 to Shield Packaging Company, Inc. ("Shield"). I have been assigned the handling of this claim.

In considering your request for coverage, we reviewed the subject policy and the allegations asserted in the Luiz Gomez Settlement Demand ("*Gomez*"). No other policies were considered. Although AIG Claims will continue to conduct an investigation, ASIC will investigate the *Gomez* claim against Shield under policy numbered EG 15411971, effective 2/1/2016 to 2/1/2017. To this end, we have retained Christine Knipper with the law firm of Wilson Elser 260 Franklin Street, 14th Floor, Boston, MA 02110 (Tel: (617) 422-5344).

We would like you to know that we are committed to working closely with you in investigating the *Gomez* claim. We expect that you may have questions after reading this letter regarding our position and the practical impact of the reservation of rights. Please feel free to contact me regarding any questions you may have about our coverage position as well as to discuss a plan of action for the *Gomez* claim.

While we understand various AIG-Related Companies may have issued policies to Shield, this position letter and the analysis contained herein is limited to policy numbered EG 15411971, effective 2/1/2016 to 2/1/2017. If Shield asserts a right to coverage under another insurance policy issued by an AIG-



Related Company, please submit notice pursuant to the notice provisions contained in that policy.

## THE CLAIM

Luis A. Gomez has retained the law firm of Ellis Law Offices, LLP in relation to a claim his is making against Shield for an alleged incident that took place on 5/26/2016. Mr. Gomez has not filed a lawsuit but counsel representing Mr. Gomez has made a settlement demand to AIG Claims, Inc., on behalf of AIG Specialty Insurance Company, for Mr. Gomez's alleged injuries. According to the demand letter, Southern Massachusetts Staffing, Inc. ("SMS") furnished Luis Gomez to Shield to work as a laborer/machine operator.

The settlement demand alleges that on 5/26/2016 Mr. Gomez was cleaning the "gas head" of a Gas Propellant Injection Machine when the machine, due to a malfunction, started unexpectedly and a gas head nozzle needle pierced Luis Gomez's middle finger on his left hand. It is our understanding that propane, butane, and carbon dioxide was injected into his left middle finger. Mr. Gomez underwent a decompression fasciotomy of the left long finger, palm and forearm and carpal tunnel release on the same day. He has filed a workers compensation claim that is being provided by the carrier for SMS.

From our investigation into the claim, it is our understanding that Shield is in the business of aerolizing cans for customers. Shield does not employ its own employees to do the aerolizing of the cans because the work is project specific. As such, Shield would use the services of various staff leasing agencies to furnish workers. The process would be such that at the end of each day Shield would review the work for the following day and contact the staff leasing agencies to furnish workers. Because most "customer runs" would not last longer than 3 days, workers would be requested on a day-by-day basis. However, oftentimes the staff leasing agencies would send the same workers day after day. At the time of the alleged incident, Mr. Gomez had been working at Shield for approximately 2 months. Although there was no signed written agreement between Shield and SMS at the time of the alleged incident, the agreement was that SMS would bill Shield at the end of each week for the workers furnished to Shield for that week, and Shield would pay the invoice by check.

## THE POLICY

The following sections of this letter cite specific language contained in the 2016 Policy. Kindly refer to your copy of the 2016 Policy for its complete terms and conditions.

ASIC issued to Shield Packaging Company, Inc., located at 99 University Road, Canton, MA 02021-0190, a Commercial General Liability and Pollution Legal Liability policy numbered EG 15411971 for the policy period 02/01/2016 to



02/01/2017 ("2016 Policy"). Pursuant to the factual circumstances, we analyzed coverage under COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY. The limits of insurance is $1,000,000 each occurrence and $2,000,000 in the aggregate. The limits of insurance apply in excess of the $75,000 deductible. The deductible amount applies as follows:

> **SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE**
>
> . . .
>
> 10. The Limits of Insurance apply in excess of the Deductible amounts shown in Item 4. of the Declarations. The Deductible amount applies as follows:
>
> . . .
>
> b. Under Coverage A or E, to all damages because of bodily injury, property damage, environmental damage or emergency response costs as the result of any occurrence, regardless of the number of persons or organizations who sustain damages because of that occurrence.
>
> We may pay any part or all of the deductible amount to effect settlement of any claim or loss and upon notification, you shall promptly reimburse us for such part of the Deductible . . . .

## RESERVATION OF RIGHTS

ASIC will investigate the _Gomez_ claim under the 2016 Policy subject to a reservation of rights and the $75,000 deductible applicable to damages paid under the policy. We set forth below certain provisions in the 2016 Policy under which ASIC reserves the right to limit or deny coverage if warranted. By raising only certain provisions, ASIC neither waives nor intends to waive any other terms or conditions of the 2016 Policy. ASIC specifically reserves all rights under the 2016 Policy and applicable law. Also, ASIC reserves the right to assert additional defenses to coverage following receipt of all relevant information.

The 2016 Policy provides as follows:

> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply. We may, at our discretion, investigate any occurrence and settle any claim or suit that may result.
>
> . . .



b. This insurance applies to bodily injury and property damage only if:
(1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and
(2) The bodily injury or property damage occurs during the policy period; . . .

Here, bodily injury means bodily injury, physical injury, sickness, disease, mental anguish, shock or emotional distress, sustained by any person, including death resulting from any of these at any time. Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Claim means a written demand received by the insured alleging liability or responsibility on the part of the insured. Suit means a civil proceeding in which damages because of bodily injury to which this insurance applies are alleged. Suit includes an arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent or any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Here, Luis Gomez alleges bodily injury from his work at Shield on 5/26/2016. He alleges that a "gas head" malfunctioned and injected him with propane and butane used to aerolize cans. He received medical care as a result of this incident. He has made a claim, but not yet filed a suit, against Shield for his bodily injuries.

The policy contains certain exclusions that may limit or exclude coverage under the policy.

2. Exclusions
This insurance does not apply to:
. . .
e. Employer's Liability
Bodily injury to:
(1) An employee of the insured, arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business; or
(2) The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph (1) above.

This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury. This exclusion does not apply to liability assumed by the insured under an insured contract.



The 2016 Policy defines **employee** to include a leased worker but not a temporary worker. Leased worker means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. Temporary worker means a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.

From the information provided with the initial notice of claim, ASIC is unable to resolve a number of factual issues, such as whether there has been an "occurrence" or "bodily injury" that took place during the policy period. ASIC reserves the right to limit or deny coverage to the extent that there was no "bodily injury," caused by an "occurrence," to Luis Gomez from his alleged bodily injury on 5/26/2016.

Furthermore, ASIC is unable to determine whether Luis Gomez was a "leased worker" or a "temporary worker." ASIC reserves the right to limit or deny coverage to the extent that Luis Gomez is determined to be a "leased worker."

### REQUEST FOR INFORMATION

In order to complete our investigation, we ask that you provide the following information as soon as practicable:

1. Information and documentation for the project-specific work for which SMS furnished Luis Gomez on 5/26/2016.
2. Correspondence to and from SMS related to the request for workers from staff leasing firm for 5/26/2016.
3. Payroll records for Shield employees employed to work on the business of aerolizing cans.
4. Invoices from staff leasing agencies for workers furnished to Shield during the 30 days before and after 5/26/2016.
5. Any other information you feel may be pertinent and/or may assist AIG Claims in its investigation and evaluation.

### CONCLUSION

ASIC will investigate the claims against Shield under Coverage A of the 2016 Policy, subject to the policy terms and conditions, a reservation of rights. ASIC's coverage determination is based on the information presently available to us. This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the 2016 Policy, or any other policies of insurance issued by AIG or any of its affiliates.

ASIC specifically reserves the right to deny coverage on any grounds, including but not limited to those set forth above, and expressly reserves all of its rights under the 2016 Policy, including the right to assert additional defenses to any



claims for coverage and recoup defense costs should additional investigation indicate coverage is not available.

ASIC is not waiving any of its rights to deny coverage or to refuse to indemnify Shield in the future, and ASIC hereby specifically reserves its rights to do so without prejudice to any other rights it may have under the 2016 Policy.

If you have any additional information that you feel would either cause us to review our position or would assist us in our investigation or determination, we ask that you advise us as soon as possible. If you are served with any complaints, demands, or other pleadings we ask that you forward them to us immediately.

If you have any other insurance policies that may respond to the claim asserted, ASIC requests that you notify said carrier(s) immediately. Please provide copies of all coverage position by such carrier(s) relating to the claim.

We expect that you may have questions upon reading this letter and might like to discuss our coverage position. If you have any questions or concerns, please feel free to contact me at (201) 631-4167 or at Lorraine.McKay@aig.com.

Sincerely,

Lorraine McKay



EXHIBIT I

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply. We may, at our discretion, investigate any occurrence and settle any claim or suit that may result. But:

(1) The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B, medical expenses under Coverage C, or loss under Coverages D or E.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A, B and E.

**b.** This insurance applies to bodily injury and property damage only if:

(1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and

(2) The bodily injury or property damage occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of SECTION II - WHO IS AN INSURED and no employee authorized by you to give or receive notice of an occurrence or claim, knew that the bodily injury or property damage had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the policy period, that the bodily injury or property damage occurred, then any continuation, change or resumption of such bodily injury or property damage during or after the policy period will be deemed to have been known prior to the policy period.

**c.** Bodily injury or property damage which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of SECTION II - WHO IS AN INSURED or any employee authorized by you to give or receive notice of an occurrence or claim, includes any continuation, change or resumption of that bodily injury or property damage after the end of the policy period.



d. Bodily injury or property damage will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of SECTION II - WHO IS AN INSURED or any employee authorized by you to give or receive notice of an occurrence or claim:

(1) Reports all, or any part, of the bodily injury or property damage to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the bodily injury or property damage; or

(3) Becomes aware by any other means that bodily injury or property damage has occurred or has begun to occur.

e. Damages because of bodily injury include damages claimed by any person or· organization for care, loss of services or death resulting at any time from the bodily injury.

**2. Exclusions**
This insurance does not apply to:

**a. Expected or Intended Injury**
Bodily injury or property damage expected or intended from the standpoint of the insured. This exclusion does not apply to bodily injury or property damage resulting from the use of reasonable force to protect persons or property.

. . .

**d. Workers Compensation and Similar Laws**
Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

. . .

**e. Employer's Liability**
Bodily injury to:

(1) An employee of the insured, arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury. This exclusion does not apply to liability assumed by the insured under an insured contract.

. . .

**SUPPLEMENTARY PAYMENTS - COVERAGES A, B and E**
**1.** We will pay, with respect to any claim we investigate or settle, or any suit against an insured we defend under



Coverages A, B and E:

a. All expenses we incur.

b. Up to $1000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or suit, including actual loss of earnings up to $500 a day because of time off from work.

e. All costs taxed against the insured in the suit. However, these payments do not include attorney's fees or attorney's expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

. . .

### SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or suits brought; or

c. Persons or organizations making claims or bringing suits.

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A except damages because of bodily injury or property damage included in the products-completed operations hazard;

c. Damages under Coverage B;

d. Loss under Coverage D; and

e. Loss under Coverage E except damages because of bodily injury, property damage, environmental damage or emergency response costs included in the products-completed operations hazard.

The General Aggregate Limit shall apply separately to occurrences and loss on or at a single location owned or rented



by you and separately as to each other operation or project away from locations owned or rented by you.

. . .

10. The Limits of Insurance apply in excess of the Deductible amounts shown in Item 4. of the Declarations. The Deductible amount applies as follows:

a. Under Coverage D, to all loss arising out of a pollution condition or the same, related, or continuous pollution conditions.

b. Under Coverage A or E, to all damages because of bodily injury, property damage, environmental damage or emergency response costs as the result of any occurrence, regardless of the number of persons or organizations who sustain damages because of that occurrence.

We may pay any part or all of the deductible amount to effect settlement of any claim or loss and upon notification, you shall promptly reimburse us for such part of the Deductible. Subject to SECTION IV - CONDITIONS, Paragraph 15. Multiple Coverages, if the same claim or occurrence results in coverage under more than one Coverage of this Policy, only the highest Deductible under all coverages applicable to the claim or occurrence shall apply.

11. The Limits of Insurance of this Policy apply to the entire policy period. If the policy period is extended after issuance for an additional period, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance

. . .

## SECTION VI – DEFINITIONS

. . .

3. Bodily Injury means bodily injury, physical injury, sickness, disease, mental anguish, shock or emotional distress, sustained by any person, including death resulting from any of these at any time.

. . .

5. Claim means:

Applicable to Coverages A or B

A written demand received by the insured alleging liability or responsibility on the part of the insured.

Applicable to Coverage D or E

A written demand seeking a remedy or alleging liability or responsibility on the part of the insured for loss.

. . .

11. Employee includes a leased worker. Employee does not include a temporary worker, except with respect to Coverage D-1 (c.) wherein employee includes a temporary worker.

. . .

20. Leased worker means a person leased to you by a labor leasing firm under an agreement between you and the labor



leasing firm, to perform duties related to the conduct of your business. Leased worker does not include a temporary worker.
. . .

29. Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
. . .

39. Suit means a civil proceeding in which damages because of bodily injury, property damage, environmental damage or personal and advertising injury to which this insurance applies are alleged. Suit includes:

a. An arbitration proceeding in which such damages or clean-up costs are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages or clean-up costs are claimed and to which the insured submits with our consent.

40. Temporary worker means a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.



AIG Property Casualty
175 Water Street
New York, NY 10038
www.aig.com

Lorraine McKay
Senior Claims Analyst
Complex Casualty
T: (201) 631-4167
lorraine.mckay@aig.com

Please direct all regular and
certified mail to

AIG Claims, Inc.
Environmental & Mass Torts
Claims
PO Box 26027
Shawnee Mission, KS 66225

**VIA E-MAIL:** sgarzi@shieldpackaging.com

May 9, 2018

Lou Sgarzi
Shield Packaging Company, Inc.
99 University Road
P.O. Box 190
Canton, MA 02021

| | |
|---|---|
| **Insured:** | Shield Packaging Company, Inc. |
| **Claimant(s):** | Luis Gomez |
| **Policy #:** | EG 15411971 (02/01/2016-02/01/2017) |
| **Claim #:** | 5046784342US |

## DECLINATION OF COVERAGE

Dear Mr. Sgarzi:

AIG Claims, Inc. ("AIG Claims") is the authorized claims administrator for AIG Specialty Insurance Company ("ASIC"), which issued Commercial General Liability and Pollution Legal Liability policy numbered EG 15411971 to Shield Packaging Company, Inc. ("Shield"). I have been assigned the handling of this claim.

By this letter we are withdrawing our coverage position in the letter dated 12/28/2017 wherein we agreed, pursuant to a reservation of rights, to investigate and defend Shield in the claim asserted by Luis Gomez for an incident that occurred on 5/26/2016. Recall that Luiz Gomez alleges that on this day he was working at Shield when his left hand was injected with propellant gas. Luis Gomez required surgery to release the gas from his body.

In our 12/28/2017 letter we advised that the 2016 Policy contains certain exclusions that may limit or exclude coverage under the 2016 Policy. Specifically, the 2016 Policy sets out the following exclusion:

> **2. Exclusions**
> This insurance does not apply to:
> . . .
> **e. Employer's Liability**
> Bodily injury to:
> **(1)** An employee of the insured, arising out of and in the course of:
> **(a)** Employment by the insured; or
> **(b)** Performing duties related to the conduct of the insured's business; or



(2) The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph (1) above.

This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury. This exclusion does not apply to liability assumed by the insured under an insured contract.

The 2016 Policy defines employee to include a leased worker but not a temporary worker. According to the policy, a "leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. A "temporary worker" means a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.

From our investigation it has been determined that Southern Mass Staffing was a labor leasing firm that leased workers to Shield for work in its facility at Dudley, Massachusetts. At the time of his injury, Southern Mass Staffing leased Luis Gomez to Shield to perform duties related to your business, that is, to work in the facility packaging aerosol containers for Shield's customers. There is no evidence that Luis Gomez was substituting for a permanent employee on leave or to meet seasonal or short-term workload conditions on 5/26/2016.

## CONCLUSION

AIG Claims, on behalf of ASIC, is denying coverage under the policy to indemnify Luis Gomez for his injuries pursuant to the employee exclusion in the 2016 Policy. If you have any additional information that you feel would either cause us to review our position or would assist us in our investigation or determination, we ask that you advise us as soon as possible. If you are served with any complaints, demands, or other pleadings we ask that you forward them to us immediately.

If you have any other insurance policies that may respond to the claim asserted, ASIC requests that you notify said carrier(s) immediately. Please provide copies of all coverage position by such carrier(s) relating to the claim.

We expect that you may have questions upon reading this letter and might like to discuss our coverage position. If you have any questions or concerns, please feel free to contact me at (201) 631-4167 or at Lorraine.McKay@aig.com.

Sincerely,

Lorraine McKay



# Sulloway
# & Hollis P.L.L.C.
### COUNSELORS AT LAW

BARBARA O'DONNELL
Direct: (401) 421-3659
Main: (401) 421-7110
Email: bodonnell@sulloway.com

www.sulloway.com | 40 Westminster Street Suite 201 Providence, Rhode Island 02903

August 20, 2018

*Via Fax, Electronic and First Class Mail*
*lsgarzi@shieldpackaging.com*
*Fax:* (781) 828-4254

Lou Sgarzi
Shield Packaging Co., Inc.
99 University Road
P.O. Box 190
Canton, MA 02012

RE:     Insured:    Shield Packaging Co., Inc.
        Claimant: Luis A. Gomez
        Policy No.:WC 0391568
        Action:    *Gomez v. Shield Packaging Co., Inc.*
        Claim No.: WC 4618003628 01
        DOL:      5/26/16

Dear Mr. Sgarzi:

As I believe you know, Star Insurance Company ("Star") has retained this firm to assist it in
evaluating the application of the above-referenced workers compensation and employer
liability policy issued to Shield Packaging Co., Inc. ("Shield") for the period January 4, 2016 to
January 4, 2017 (the "Policy") to the claims asserted in the civil action Luis A. Gomez
("Gomez") recently filed in Hampshire County Superior Court as C. A. No. 2018 80 CV 00112
to recover for injuries and losses allegedly sustained in a workplace accident that occurred on
May 26, 2016 in Shield's Dudley, Massachusetts facility(the "Civil Action").

For the reasons detailed more fully below, Star has determined that the Policy does not entitle
Shield to defense and/or indemnification coverage for the claims and allegations asserted
against it in the Civil Action. If Mr. Gomez or any other individuals or entities file any
additional or amended claims against Shield, please provide Star with copies of those claims
for a supplemental coverage determination.

*Serving Clients and Communities for more than 160 Years*
**NEW HAMPSHIRE | MASSACHUSETTS | RHODE ISLAND | MAINE | VERMONT**
*Individual attorneys not licensed in all states*
{114015-0004 C1321940.1 }

August 20, 2018
Page 2

## Civil Action Background

Star received its initial notice of Mr. Gomez' workplace accident on May 18, 2018 when Shield provided it with an incident report prepared in May 2016 regarding Mr. Gomez' accident and additional information including a March 10, 2107 notice of claim submitted by Mr. Gomez' attorney, the Ellis Law Office, and a May 9, 2018 coverage disclaimer issued by AIG, Shield's general liability carrier.

When Star initiated its investigation into Shield's request for coverage under the employer liability coverage part of the Star Policy, Gomez had not initiated his Civil Action and Shield had not, to Star's knowledge, received any other written demand concerning Mr. Gomes' alleged entitlement to recover compensation for his claimed injuries, losses and/or receipt of workers compensation benefits for the May 2016 workplace accident.

Through its investigation into this matter, Star obtained information from Shield regarding its reliance on Southern Massachusetts Staffing ("SMS") to provide between ¼ to ½ of Shield's workforce for the facility it operates in Dudley, Massachusetts to conduct its business of packaging aerosol containers for various customers. Notwithstanding its reliance on SMS for most, if not all, of its production line workforce, Shield and SMS did not enter into a written agreement concerning their respective obligations concerning the compensation of the workers provided by SMS and/or their entitlement to workers compensation coverage for any injuries sustained while working at Shield's facilities. In lieu of entering into a formal written agreement concerning their respective roles and obligations, SMS and Shield operated under a business arrangement in which SMS directly employed and compensated the workers furnished to Shield and then invoiced Shield on a weekly basis for the cost of the workers' services based upon the number of hours worked and jobs performed.

Under their business arrangement, SMS carried workers compensation coverage for the workers furnished to Shield and its other customers. Shield, in turn, carried workers compensation coverage for the individuals it directly employed, most of whom held administrative or executive positions, rather than front line manufacturing positions.

When the accident occurred in May 2016, Luis Gomez had been working for Shield for approximately two (2) months. According to the incident report and other information provided by Shield, Mr. Gomez was cleaning the "gas head" of a gas propellant injection machine at the Dudley, Massachusetts facility when the machine allegedly started unexpectedly, piecing his middle finger on his left hand with a gas head nozzle needle. After obtaining medical treatment for injuries caused by the accidental injection of propane, butane and carbon dioxide into his finger, Mr. Gomez submitted a claim for workers compensation benefits through Travelers, SMS' workers compensation carrier.

At some point following its receipt of the March 10, 2017 notice of claim from Mr. Gomez' attorney, Shield submitted a request for coverage to AIG, its general liability insurer. By letter dated December 28, 2017. AIG informed Shield that it would conduct an investigation into

August 20, 2018
Page 3


Shield's potential entitlement to coverage for Gomez' claim under a reservation of rights with the firm of Wilson Elser retained to defend Shield against Atty. Ellis' notice of claim.

Subsequently, by letter dated May 9, 2018, AIG informed Shield that it was withdrawing defense coverage for this matter and denying any obligation to provide Shield with indemnification coverage for Gomez' claims. As grounds for revised coverage position, AIC informed Shield that its investigation supported the determination that Gomez was working as a leased versus temporary worker supplied by SMS, a labor leasing firm, at the time of the Accident, thereby allowing AIG to rely on the employer's liability exclusion in its commercial general liability policy to deny coverage for any claims arising out of his May 26, 2016 accident.
A few months prior to issuing its May 9, 2018 coverage disclaimer, AIG had apparently received and rejected a request for reimbursement from Travelers for approximately $50,310.00 in workers compensation benefits paid to Mr. Gomez' for his asserted injuries and wage losses.

Prompted by these developments, Shield submitted a request for coverage under the employer liability part of its Policy in May 2018 for any claims that might arise out of Gomez' accident. On August 15, 2018, Shield informed Star of its receipt of the summons and complaint filed against it in Hampshire County Superior Court in the Commonwealth of Massachusetts. Based upon the date of service shown on the summons, Shield's response to Mr. Gomez' lawsuit is currently due on or around August 27, 2018. Consequently, Shield may want to request an extension of time to respond to the complaint from Mr. Gomez' counsel if it has not already done so.

Gomes' complaint includes the following allegations in support of his negligence claim against Shield (which is the only cause of action asserted in the complaint). By summarizing the allegations contained in Mr. Gomez' complaint, Star does not take any position regarding the truth or accuracy of his allegations and/or the merit of his claims. Instead, Star provides an overview of Gomez' allegations to frame the explanation of its coverage position.

Gomez' complaint alleges that he sustained serious injuries during a workplace accident that occurred on May 26, 2016 when he was working at Shields' facility in Dudley, Massachusetts. Describing himself as a SMS employee, Gomez contends that the gas propellant injection machine owned, maintained, supervised and operated by Shield suddenly started with no warning when Gomez was cleaning a gas head nozzle on the machine. Gomez alleges that he was injected with toxic gases and chemicals when the gas propellant machine started suddenly and unexpectedly during his cleaning operations. Gomez' alleges that he had to undergo several medical procedures, physical therapy and treatment to remedy the injuries sustained in in his accident, some of which he contends are permanent in nature. Gomez also alleges that OSHA cited Shield for multiple "serious" and "repeat" violations following its investigation into this incident.

[11 9916-0004 C1121440.1 ]

August 20, 2018
Page 4

Based upon these allegations, Gomez asserts a negligence cause of action against Shield. As relief, he asserts an entitlement to recover compensatory damages for his asserted injuries. According to the itemized statement attached to his complaint, Gomes has incurred approximately $82,000 in medical bills and lost wages as a result of the accident, in addition to other unspecified damages and losses that allegedly entitle him to recover approximately $1 million in damages from Shield.

### The Relevant Star Insurance Policy Provisions

Star Insurance Company issued the above-referenced workers compensation and employers liability insurance policy No. WC 0391568 issued to Shield Packaging Co., Inc. for the period January 4, 2016 to January 4, 2017. The potential availability of coverage for this matter is governed by Part Two of the Policy, the Employers Liability Insurance section. This part of the Policy affords specified Employers Liability Insurance coverage for claims brought by your employees to recover for bodily injury caused by accidents or diseases which "arise out of and in the course of the injured employee's employment by you" in certain situations in which coverage is not available under the workers compensation insurance provisions contained in Part One of the Policy.

For claims covered by the Policy's Employers Liability Insurance section, Star will "pay all sums that you legally must pay as damages because of bodily injury to your employees" and also defend you against any "claim, proceeding or suit against you for damages payable by this insurance."

The Policy's Employers Liability Insurance coverages are subject to a $1,000,000 each accident limit of liability. For claims which satisfy the requirements of the Policy's threshold insuring agreement, it is necessary to determine if coverage is restricted or eliminated by any of the specific Policy Exclusions contained in Section C. In this situation, there is no need to address the potential application of any of the Policy's specific Exclusions because Gomez' complaint does not satisfy the Policy's threshold insuring agreement requirements in the first instance because he does not seek to impose liability upon Shield for injuries arising out of and sustained in the course of his employment by Shield.

### Star Insurance Company's Coverage Disclaimer

Based on its comparison of the relevant Policy provisions and the allegations contained in Gomez' complaint, Star has determined that the Policy does not entitle Shield to defense or indemnification coverage for any of the claims or allegations asserted in the Civil Action because Mr. Gomez does not contend that he was employed by Shield at the time of Accident or seek to recover for bodily injuries sustained in the course of his employment by Shield.

In lieu of asserting that he was employed by Shield at the time of the Accident, Mr. Gomez' bases his negligence claim against Shield on its asserted failure to properly maintain the gas

August 20, 2018
Page 5

propellant machine it owned and operated and/or warn him against the safety hazards presented by the allegedly faulty machine.

Based upon its determination that Gomez' complaint does not seek to impose liability upon Shield for injuries sustained during the course of his employment by Shield, Star denies any obligation to defend or indemnify Shield against the claims asserted in the Civil Action. Star Insurance Company's foregoing explanation of its coverage position is not intended to waive, exclude or limit any other potential grounds for disclaiming or limiting coverage pursuant to the terms of the Policy and/or applicable law.

Star Insurance Company reserves the right to amend or supplement its coverage position to address any subsequently obtained information and/or to address any other potentially applicable Policy terms, conditions and limitations. Please note that no statement herein should be construed as a waiver of any rights, privileges, and/or defenses that Star Insurance Company may have under the Policy, in equity or at law. Star Insurance Company expressly reserves all such rights.

Star Insurance Company's coverage position is based upon currently available information. If you have any additional information which you believe may affect Star Insurance Company's coverage position, please forward it to my attention at your earliest opportunity.

If you have any questions concerning this matter, please do not hesitate to contact me or Elizabeth Metivier, the Star Senior Claims Representative assigned to this matter.

Sincerely,

Barbara O'Donnell

Barbara O'Donnell

cc:   Elizabeth Metivier
      Direct Phone: 978-933-4145
      Elizabeth.metivier@meadowbrook.com

      Mackinaw Underwriters Inc., a division of AmeriTrust
      10 New England Business Center Drive, Suite 110
      Andover MA 01810

{11P716-000< C1121F40.1 }



Liam T. O'Connell
Direct Line: (617) 439-2449
Fax: (617) 310-9449
E-mail: loconnell@nutter.com

October 2, 2018

*__Via Electronic Mail: lorraine.mckay@aig.com and First Class Mail__*

Lorraine McKay
Senior Claims Analyst
AIG Claims, Inc.
P.O. Box 26027
Shawnee Mission, KS 66225

> Re:  Insured:  Shield Packaging Co., Inc.
>       Claimant:  Luis Gomez
>       Policy #:  EG 15411971 (02/01/2016-02/01/207)
>       <u>Claim:  5046784342US</u>

Dear Ms. McKay:

This Firm represents Shield Packaging Co., Inc. ("Shield" or the "Company"). We are in receipt of your letter to the Company of May 9, 2018, by which AIG Claims, Inc. ("AIG"), as the authorized claims administrator for AIG Specialty Insurance Company, purported to withdraw its earlier coverage position of December 23, 2017 and purported to deny defense and indemnity coverage to Shield for the claims asserted by Luis Gomez referenced above. AIG's purported denial of indemnity and defense coverage is inconsistent with its previous acknowledgement of coverage to Shield's sister company Harrison Specialty Co., Inc. ("Harrison") pursuant to AI Specialty Lines Insurance Company policy number 2675211 (effective 2/1/99 through 2/1/02), and is a clear violation of AIG's coverage obligations under Massachusetts law.

In the lawsuit titled *Isoline J. Barros v. Harrison Specialty Co., Inc. and Resina Corporation,* Harrison tendered notice of coverage to AIG under a materially similar insurance policy. In the *Barros* case, like the present case, a temporary employee claimed to have been injured while working at the insured's premises. The manner in which temporary workers were assigned to work at Harrison was, in all material respects, the same as the manner in which Mr. Gomez was assigned to work at Shield in the present case. In the *Barros* case, AIG accepted coverage on behalf of Harrison.

As you know, Mr. Gomez's allegations relate to an accident that occurred at Shield on May 27, 2016. On that date, AIG's policy numbered EG 15411971, (effective 2/1/2016 to 2/1/2017) was in effect. AIG's Declination of Coverage dated May 9, 2018 appears to be based on a conclusion that Mr. Gomez was a "leased worker" to Shield, and not a "temporary worker", as defined in the applicable policy. AIG's conclusion on this issue is incorrect, as Mr. Gomez





and other South Shore Staffing workers were utilized by Shield as temporary employees to augment Shield's regular workforce, so as to meet seasonal or short-term heavy workload conditions. As such, these workers were "temporary workers" under the terms of the applicable policy. Moreover, AIG's declination of coverage in this case is at odds with its earlier acceptance of coverage under factually similar circumstances in the *Barros* case, and Massachusetts case law on this issue. Indeed, in *Central Mut. Inst. Co. v. True Plastics Inc.*, 84 Mass. App. Ct. 17 (2013), the Appeals Court considered whether an insurer was obligated to provide coverage under a general liability policy identical to AIG's policy in this case, based on facts very close to the facts in our case – a temporary employee injured while working at a plastics company that regularly hired temporary workers to meet its fluctuating workflow. The court found the worker to be a "temporary worker" and not a "leased worker" when the company hired the worker with the expectation (prospectively) that the worker would fill a short term need, even where that need extended for an indefinite period. *Id.*, p. 24.

Under the terms of the policy in effect on the date of Mr. Gomez's injury, and consistent with AIG's acceptance of coverage in the *Barros* case and Massachusetts case law, Shield's claim for indemnity and defense should be accepted. Accordingly, pursuant to AIG policy numbered EG 15411971 (effective 2/1/2016 to 2/1/2017), Shield renews its request and demand for defense and indemnity in the above-referenced case filed by Luis Gomez. In making this demand, Shield specifically reserves its rights pursuant to Mass. Gen. Law Ch. 176D.

Please do not hesitate to contact me with any questions.

Very truly yours,

Liam T. O'Connell

LTO/wmgf

cc:   Lou Sgarzi

4069649.1

# THE WAGNER LAW GROUP

### www.wagnerlawgroup.com

99 SUMMER STREET, 13TH FLOOR
BOSTON, MA 02110
Tel (617) 357-5200

7108 FAIRWAY DRIVE, SUITE 125
PALM BEACH GARDENS, FL 33418
Tel (561) 293-3590

300 MONTGOMERY ST., SUITE 600
SAN FRANCISCO, CA 94014
Tel (415) 625-0002

101 E. KENNEDY BLVD., SUITE 2140
TAMPA, FL 33602
Tel (813) 603-2959

800 CONNECTICUT AVE., N.W., SUITE 810
WASHINGTON, D.C. 20006
Tel (202) 969-2800

190 S. LASALLE ST., SUITE 2100
CHICAGO, IL 60603
Tel (847) 990-9034

25 W. MOODY AVENUE
ST. LOUIS, MO 63119
Tel (314) 236-0065

55 OLD BEDFORD RD., SUITE 303
LINCOLN, MA 01773
Tel (617) 532-8080

October 25, 2018

*Via E-Mail to: loconnell@nutter.com*
*and First Class Mail*

Liam T. O'Connell, Esq.
Nutter McClennen & Fish LLP
155 Seaport Blvd.
Boston, MA 02210

Re:  **Luis A. Gomez v. Shield Packaging Company, Inc.**
     **Hampshire County Superior Court, C.A.# 2018-80CV-00112**

Dear Mr. O'Connell:

I represent AIG Claims ("AIG") and AIG Specialty Insurance Company ("ASIC") with regard to the lawsuit filed by Louis Gomez against your client, Shield Packaging Co. ("Shield"), in Hampshire County Superior Court. By letter to Lorraine McKay dated October 2, 2018, you requested that AIG withdraw its declination of coverage and instead provide Shield with defense and indemnity against the *Gomez* action. In support of your request, you asserted that Mr. Gomez was a temporary employee and that AIG had previously provided coverage for a similar action against a sister company of Shields.

ASIC issued commercial general liability and pollution legal liability policy no. 15411971 to Shield Packaging for the policy period February 1, 2016 to February 1, 2017. AIG denied coverage for the *Gomez* claim under the policy's bodily injury coverage, provided under Coverage A in the policy, based upon Exclusion e, which precludes coverage for claims of "bodily injury to . . . an employee of the insured." The policy defines "employee" for these and other purposes to include a "leased worker," but not a "temporary worker." The policy defines "leased worker" as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm. . . Leased worker does not include a temporary worker." The

{13194/A0381310.1}

policy defines "temporary worker" as "a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions."

Pursuant to these policy terms, if Mr. Gomez was a "leased worker" as that term is defined in the policy, the employee injury exclusion applies to his claim against Shield and Shield is not covered against the *Gomez* action. Mr. Gomez alleges in his complaint that he was an "employee of Southern Mass Staffing, Inc. and was assigned by his employer to work as a machine operator" at Shield, where he was injured. The complaint, both standing on its own and when read in conjunction with all surrounding information known to AIG at this point, can only be interpreted as alleging that Mr. Gomez was a "leased worker" for purposes of the policy. As a result, the claim is excluded from coverage by the employee injury exclusion in the policy and there is no coverage for this claim. The complaint therefore does not trigger a duty to defend on the part of ASIC.

Although the exclusion would not apply if Mr. Gomez was a "temporary worker" as that term is defined in the policy and not a "leased employee," there are no allegations in the complaint suggesting that Mr. Gomez was simply a "temporary worker" as that term is defined in the policy. Furthermore, facts sufficient to establish that Mr. Gomez would qualify as a "temporary worker" for purposes of the policy have not been provided to AIG. Determining whether Mr. Gomez was a "temporary worker" for these purposes is a factual determination that depends, *inter alia*, on the insured's use of leased employees, the insured's reason for using the injured worker, and the work flow that required the use of the worker. *See e.g. Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 80 (1st Cir. 2009).

As a matter of law in the Commonwealth, Shield has the burden of proving that Mr. Gomez was a "temporary worker" for purposes of the policy to avoid application of the employee exclusion. *Cent. Mut. Ins. Co. v. True Plastics, Inc.*, 84 Mass. App. Ct. 17, 23, 992 N.E.2d 385, 390 (2013). We invite you to submit information that would satisfy the insured's burden in this regard if Shield is still interested in seeking coverage for this claim. If and when we receive that information, we will further evaluate AIG's declination. On the allegations of the complaint and the information known at this time, however, the *Gomez* claim falls within the scope of the employee injury exclusion in the policy and is not covered.

In your October 2, 2018 letter, you also referenced a prior claim that you believe was covered by AIG under a different policy issued to a different insured. If you would like to submit further information concerning that claim, we will review it. However, your letter assigns the claim to a policy that expired in 2002. Since that time, the Massachusetts Appeals Court and the First Circuit have issued a series of opinions that establish the parameters and operation of the employee injury exclusion under the circumstances of the instant matter. *See, e.g., Scottsdale Ins. Co.; Cent. Mut. Ins. Co; Monticello Ins. Co. v. Dion*, 65 Mass. App. Ct. 46, 836 N.E.2d 1112 (2005). Accordingly, any coverage determination made in or before 2002 was not based on current Massachusetts law.

AIG's coverage determination in the instant matter, in contrast, is based on that series of decisions, which represent controlling authority on the issues raised by your correspondence.

Liam T. O'Connell, Esq.
October 25, 2018
Page 3

Under this case law, the *Gomez* suit is not covered. This is the proper application of current Massachusetts law to the *Gomez* claim, regardless of what may have been decided with regard to the prior claim referenced in your correspondence.

For the reasons discussed above, AIG therefore maintains its declination of coverage for the *Gomez* lawsuit. ASIC will not defend or indemnify Shield against the *Gomez* action. We invite you, however, to submit any information or documents which you believe demonstrate that Mr. Gomez was a "temporary worker" for purposes of the ASIC/Shield policy. If and when we receive that information and material, we will again evaluate your request.

AIG and ASIC reserves the right to raise additional policy terms and defenses to coverage as appropriate. AIG and ASIC do not waive, nor shall be estopped from raising, any additional policy terms or coverage defenses in addition to those discussed above.

Please do not hesitate to contact me if you would like to discuss any aspect of this matter further.

Sincerely,

Stephen D. Rosenberg

SDR/lam