UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHIELD PACKAGING CO., INC.,

               Plaintiff,

v.

STAR INSURANCE COMPANY, AIG
CLAIMS and AIG SPECIALTY
INSURANCE CO.,

               Defendants.

CIVIL ACTION NO.   1:19-cv-10451

**MEMORANDUM OF LAW IN SUPPORT OF THE AIG DEFENDANTS'[1] MOTION TO SEVER AND STAY COUNT IV OF THE COMPLAINT, OR IN THE ALTERNATIVE, STAY AND/OR BIFURCATE DISCOVERY RELATING TO CHAPTER 93A AND 176D CLAIMS**

      The Plaintiff Shield Packaging Co., Inc. ("Shield") alleges in this action that two of its insurers, AIG Specialty Insurance Co. ("AIG") and Star Insurance Company, have breached their respective insurance contracts by failing to defend and/or indemnify Shield in an underlying tort action. That tort action, which remains pending in Hampshire County Superior Court, is captioned *Luis A. Gomez v. Shield Packaging Inc.*, Civil Action No. 1880CV00112 (the *"Gomez Action"*). By pleading its breach of contract claim alongside its purported "bad faith" claim against the AIG Defendants, Shield intertwines two causes of action that require entirely different proofs. Moreover, only one of those claims (the "bad faith" claim) may involve privileged attorney-client communications that are not fodder for potential discovery unless and until this Court determines first, as a matter of law, that AIG Specialty's insurance contract

---

[1] In addition to the insurers, the plaintiff also named as a defendant "AIG Claims", which appears to be a misnomer for "AIG Claims, Inc." the authorized claims administrator for AIG Specialty Insurance Co. with respect to the claim submitted by the plaintiff. For simplicity, we will refer to these entities collectively as "the AIG Defendants"

obligates it to defend and indemnify Shield. Until that legal determination is made, the "bad faith" theory (Count IV) should be severed from the contract action, or at the very least, all discovery relative to that claim should be stayed and/or bifurcated from the contract claim.

The allowance of the AIG Defendants' motion will avoid prejudice and potential discovery of attorney-client communications; expedite the contract dispute that involves interpretation of an insurance policy as against the underlying *Gomez Action* allegations; and preserve judicial and litigant resources. As such, Shield's Chapter 93A/176D claims against the AIG Defendants should be severed, stayed and/or bifurcated for discovery purposes unless and until this Court determines that AIG Specialty was actually required under its insurance contract to defend Shield for the *Gomez* action. In fact, in its own Complaint, Shield acknowledges that any alleged "bad faith" liability is only applicable "*if* AIG [Claims, Inc.] and [AIG Specialty Insurance Co.] are determined to be found to have a duty to defend and indemnify Shield." (*See,* Declaratory Judgment Complaint, page 2). Clearly, this Court must interpret the insurance policy first, and find in Shield's favor, lest the Ch. 93A/176D claims are mooted.

## BRIEF FACTUAL BACKGROUND

The underlying *Gomez Action*, as noted in Shield's instant Complaint, alleges that Luis Gomez was assigned by Southern Mass Staffing Inc. to work at Shield's packaging plant. Gomez was injured while working as a machine operator on May 26, 2016. Mr. Gomez filed suit against Shield on or around June 1, 2018. Shield submitted the *Gomez Action* to the AIG Defendants on October 6, 2017. Following an investigation, the AIG Defendants denied coverage for the matter on May 9, 2018, based upon the language of the AIG Specialty Commercial General Liability (CGL) Policy (the "Policy") it issued to Shield, the allegations in the *Gomez Action*, and the insured's evidence of Mr. Gomez's "employment" status. Shield filed the instant Complaint on

February 4, 2019. Shield alleges four counts against the AIG Defendants: a declaration as to their duty to defend (Count I); a declaration as to their duty to indemnify (Count II); breach of contract (Count III); and violations of M.G.L c. 93A and M.G.L c. 176D (Count IV).

## LEGAL ARGUMENT

**I.    SHIELDS MUST, AS A PREREQUISITE TO "BAD FAITH" DISCOVERY, PREVAIL ON ITS BREACH OF CONTRACT CLAIM, LEST THERE BE IRREPARABLE PREJUDICE AND WASTE OF THE COURT'S AND THE PARTIES' RESOURCES**

Pursuant to Fed. R. Civ. P. 42(b), "to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Severing, staying or bifurcating discovery relative to Count IV here would avoid wasting the Court's and the parties' time on a "bad faith" claim that may never come to pass (and would be moot) unless and until the Court interprets the AIG Specialty policy to require a defense and/or indemnification to Shield.[2] The interpretation of insurance policies is a matter of law for the courts, and always has been. *Cody v. Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982); *Center for Blood Research, Inc. v. Coregis Ins. Co.*, 305 F.3d 38, 41 (1st Cir. 2002). The Court's interpretation of the AIG Specialty policy, as black-letter insurance law, will depend on the policy language, the allegations of the *Gomez Action* complaint, the insured's evidence of Mr. Gomez's "employment" status attached to its Complaint, and applicable decisional law regarding "leased workers" and "temporary workers" under CGL policies. *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 200-01 (2001) ("The duty to defend is determined based on the facts alleged in the complaint, and on facts known or readily knowable by the insurer that may aid in its interpretation of the allegations in the complaint.");

---

[2]    In this case, Shields must first establish that the AIG Defendants breached the insurance contract in order to have a compensable injury and then pursue its "bad faith" claim; it can't proceed with the latter without the former. *See Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 823 (2014) *quoting Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 503 (2013) (noting that a plaintiff bringing a Chapter 93A claim must allege and ultimately to prove a "distinct injury").

*Philadelphia Indemnity Insurance Company v. Consigli Construction Company, Inc.* 2017 WL 1080904, at * 2 (D. Mass. March 22, 2017); *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 10-11 (1989). Further, the Court's interpretation will boil down to a discrete issue – whether the AIG Defendants were correct in their coverage determination that an exclusion precluded coverage because Mr. Gomez was a "leased employee" as that term is defined by the Policy. All of these issues can be presented to the Court with little to no discovery, and presented via cross-motions for summary judgment.

If the Court were to ultimately rule that AIG Specialty owed a defense to Shield and thus breached its contract, then, and only then, should the parties proceed with discovery into the AIG Defendants' claims handling and whether the denial of coverage was a reasoned, good faith mistake. The claim file must be shielded from discovery unless and until the AIG Defendants have been found in breach. Until that prerequisite finding has been made, discovery on claims handling is premature and an inefficient use of time at best, and irreparably prejudicial to the AIG Defendants at worst. As Judge Lamire stated in *Baram v. Chestnut Hill Realty*, No. 2017-J-0377 (Mass. App. Ct. Sept. 21, 2017), allowing discovery to proceed into the bad faith claim while the tort/contract claim is still pending is:

> approaching the two claims in the wrong order. Doing so creates a host of problems, in particular, allowing discovery of issues that would, with respect to the tort claim be undiscoverable (e.g., the insurer's claim file). Those problems cannot practicably be solved by means of appeal after the trial of both claims.

Accordingly, it is common practice to stay bad faith claims against an insurer that are dependent on the outcome of other claims that have yet to be adjudicated. *See Rivera v. Commerce Ins. Co.*, 84 Mass. App. Ct. 146, 147 n.4 (2013); *Driscoll v. Liberty Mut. Ins. Co.*, 1995 WL 808876, at *2 (Mass. Sup. Ct. May 26, 1995) (noting that the court had previously bifurcated the breach of contract claim in the case from the G.L. c. 93A and G.L .c. 176D

4

claims); *see also Lamoureaux v. Merrimack Mut. Fire Ins. Co.,* 751 A.2d 1290, 1293 (R.I. 2000) ("Before a bad-faith claim can even be considered, a plaintiff must prove that the insurer breached its obligation under the insurance contract."); *Sandoval v. RLI Ins. Co.*, No. CV 17-12054-JGD, 2017 WL 6447866, at * 2 (D. Mass. Dec. 18, 2017) ("the law in Massachusetts is clear that discovery from RLI relating to the claim of unfair settlement practices should be stayed until Sandoval's action against Rockwood is completed."). Indeed, if Shield loses on its contract claim, its "bad faith" claim is mooted entirely.

Premature discovery on "bad faith" claims also could potentially expose an insurer's work-product protected or privileged materials to disclosure. The AIG Defendants would be unduly prejudiced if such discovery were allowed before it is even determined whether Shields may proceed with a bad faith claim by establishing a breach of contract. *See Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1010 (R.I. 2002) (noting the "significant procedural protections" for insurers that a stay of discovery provides); *Ferro Corp. v. Cont'l Cas. Co.,* No. 1:06CV1955, 2008 WL 5705575, at *5 (N.D. Oh. Jan. 7, 2008) (granting motion to stay discovery and noting that the defendant's "attorney-client communications relating to the bad faith issue are interrelated with coverage issues"); *Gatewood v. Universal Underwriters Life Ins. Co.,* No. 5:06CV125-R, 2007 WL 496375, at *2 (W.D. Ky. Feb. 7, 2007) (granting motion to stay discovery "to avoid the product[ion] of privileged documents irrelevant to the contract action and prejudicial to the insurer"). Staying or bifurcating discovery on Shield's bad faith claims would avoid the inevitable prejudice to the AIG Defendants and promote judicial economy by potentially resolving the entire civil action without engaging the parties in contentious discovery on the bad faith issues.[3]

---

[3]       Where this matter was removed to this Court based on diversity, under the *Erie* doctrine, procedural (rather than substantive) issues are governed by federal law, such as this Court's "broad discretion to manage discovery,"

II.   **JUDICIAL ECONOMY IS SERVED BY SEVERING, STAYING OR BIFURCATING BECAUSE SHIELD'S "BREACH OF CONTRACT" CLAIM CAN LARGELY BE DECIDED ON A FEW READILY AVAILABLE DOCUMENTS AND DECISIONAL LAW; WHEREAS THE "BAD FAITH" CLAIMS WILL REQUIRE MORE EXTENSIVE, AND DISTINCT, PROOFS AND EVIDENCE**

Judicial economy is further served by segmenting the "bad faith" claim because the declaratory judgment/breach of contract question can be decided based on the documents (basically, the "8 corners rule" - the policy and the underlying *Gomez* complaint); whereas the "bad faith" allegations will require separate and more involved evidence (such as production of the claim file at least) and witnesses (potentially counsel for Shield[4] and the AIG Defendants). By way of a few examples, to defend against allegations of bad faith, "the insurer may clearly demonstrate its good faith by the introduction of affidavits and internal documents which explain the progress of the insured's claim." 14 Lee R. Russ & Thomas F. Segalla, COUCH ON INSURANCE § 204:39 (3d ed. 1999). Typically, an insured's discovery requests in bad faith actions will center on the "investigation, evaluation, and processing" of the underlying claim. *Skaling, supra,* 799 A.2d at 1011. Insureds such as Shield here may endeavor to discover the "reasoning" for the insurer's response. 14 COUCH ON INSURANCE § 204:28. As noted, this may require disclosure of otherwise work-product-protected material, such as the claim file.

---

*Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38, 41 (1st Cir. 2003); *see Gillin v. United States Dep't of Army,* 1994 WL 87237, at *1 (1st Cir. March 18, 1994) (finding no abuse of discretion in district court's stay of discovery). As noted, Rule 42 of the Federal Rules of Civil Procedure authorizes bifurcation of claims for trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "Although a federal court sitting in diversity applies the law of the forum state, the conduct of discovery and bifurcation are matters of federal procedural law." *Riddle v. Royal Indem. Co.,* Civil Action No. 3:05CV-540-S, 2007 WL 542389, at *1 n.1 (W.D. Ky. Feb. 16, 2007).

[4]   Regarding Shield's counsel, to allow concurrent discovery and prosecution of the G.L. c. 93A/176D claims with the breach of contract claim is also impracticable because Shield's own counsel from Nutter (the same law firm for the *Gomez* action, the coverage letters, and the instant action) is likely a necessary witness for "bad faith" claims brought on behalf of Shield. Thus, Shield's counsel may be subject to disqualification as it cannot serve as both counsel for the client in this matter and a percipient witness. *See* Mass R. Pro. C. 3.7; *Carta ex rel. Estate of Carta v. Lumbermens Mut. Cas. Co.,* 419 F. Supp.2d 23, 30 (D. Mass. 2006) (disqualifying plaintiff's counsel where "without the testimony of the plaintiff's lawyers, there would be no one who could testify about the … circumstances underlying the defendants' purportedly unfair settlement practices.").

Practically speaking, an advice-of-counsel defense may also be asserted in defense to a "bad faith" claim, and such a defense implicates discovery of attorney-client privileged material. *See generally* 2 Michael F. Aylward, NEW APPLEMAN INSURANCE LAW PRACTICE GUIDE § 19.18 (2009). Insurers often rely on their internal documents to "explain the progress" of the claim and thereby substantiate a "reasonable basis" for the actions taken. *Skaling*, 799 A.2d at 1012. Moreover, when prosecuting and defending a bad faith claim, the insured or the insurer may rely on expert discovery to establish good faith or lack thereof.  None of this latter evidence – which is likely to consume significant time and resources for the Court and the parties – is relevant to the prerequisite "breach of contract" claim that rests on the language of the policy, the allegations in the *Gomez Action* complaint, and the applicable decisional law interpreting the CGL policy language at issue here.

**III.    THERE IS NO PREJUDICE TO SHIELD IF THE AIG DEFENDANTS' MOTION IS GRANTED, BUT IRREPARABLE PREJUDICE TO THE AIG DEFENDANTS IF BAD FAITH DISCOVERY IS ALLOWED TO PROCEED WITHOUT ANY FINDING OF BREACH**

There will be no prejudice to Shield if the AIG Defendants' Motion is granted. Shield will be free to immediately pursue any rights it may have against them if its contract-based claims against them should be resolved in its favor. *See M.J. Flaherty Co. v. U.S. Fid. & Guar. Co.*, 61 Mass. App. Ct. 337, 340 (2004) (describing the practice of staying an unfair settlement claim pending the resolution of the underlying claim as a "sensible step" in litigation). If Shield does not prevail on the underlying claims, the allowance of this Motion will actually have benefitted it because it will not have spent valuable time and money pursuing futile bad faith claims. *See Reliance Ins. Co. v. Wilson*, No. C 90-20006 JPV, 1990 WL 751025, at *2 (N.D. Cal. Oct. 3, 1990) (finding that a stay of discovery would "serve judicial economy and potentially save the parties needless expense").

7

## CONCLUSION

For the reasons set forth herein, the AIG Defendants respectfully request that their Motion to Sever and Stay Count IV of the Complaint, or in the Alternative, Stay or Bifurcate Discovery Relating to Chapter 93A and 176D Claims, be allowed.

> The Defendant,
> AIG Specialty Insurance Company and AIG Claims, Inc. (Misnamed "AIG Claims")
> By its attorneys,
>
>
> /s/ Lincoln A. Rose
> Tamara Smith Holtslag, BBO#634027
> Lincoln A. Rose, BBO#691797
> Peabody & Arnold LLP
> Federal Reserve Plaza
> 600 Atlantic Avenue
> Boston, MA 02210
> (617) 951-2011
> tsmith@peabodyarnold.com
> lrose@peabodyarnold.com

Dated: March 18, 2019

### CERTIFICATE OF SERVICE

I, Lincoln A. Rose, hereby certify that I have, on March 18, 2019 served a copy of the foregoing document, by causing a copy thereof, to be sent electronically, through the ECF system, to the registered participants in this case, as identified on the Notice of Electronic Filing (NEF). Participants in this case not registered on the ECF system, if any, will receive service through regular first class mail.

> /s/ Lincoln A. Rose
> Lincoln A. Rose

1557040_6
15951-204317

8